PRIME MANAGEMENT COMPANY, IN-
CORPORATED, Plaintiff–Appellant,
Cross–Appellee,

v.

John F. STEINEGGER and Nancy J.
Steinegger, d/b/a Franz Melzer Associ-
ates, Defendants–Appellees, Cross–Ap-
pellants.

Nos. 761, 864, Dockets 89–7982, –7984.

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1990.

Decided May 24, 1990.

Kathleen C. Stone (James R. Hawkins, II, William A. Collier, Robinson & Cole, Hartford, Conn., on the brief) for plaintiff-appellant, cross-appellee.

Matthew J. Forstadt (Scott G. Grubin, Schatz & Schatz, Ribicoff & Kotkin, Stamford, Conn., on the brief) for defendants-appellees, cross-appellants.

Before OAKES, Chief Judge, and KEARSE and FLETCHER *, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Prime Management Company, Incorporated ("Prime"), appeals from so much of a judgment entered in the United States District Court for the District of Connecticut after a bench trial before Ellen Bree Burns, *Chief Judge*, as awarded defendants John F. Steinegger and Nancy J. Steinegger, d/b/a Franz Melzer Associates (defendants and their associated business entities collectively referred to hereafter as "Steinegger"), $161,542.05 as damages on their counterclaim for Prime's underpayment of rents due under a May 1972 lease agreement (the "rent counterclaim"), plus attorney's fees. On appeal, Prime contends that the rent counterclaim should have been dismissed on grounds of res judicata. Steinegger cross-appeals from so much of the judgment as denied it prejudgment interest on the rent counterclaim, denied it attorney's fees expended for the successful defense of Prime's complaint, and dismissed its suit to evict Prime from the rented premises.

## I. BACKGROUND

In May 1972, Prime Motor Inns, Inc., which was Prime's parent company, and Steinegger entered into a contract pursuant to which Steinegger was to convert a partially constructed office building in Stamford, Connecticut, into a motel. Concurrently, Prime agreed to lease from Steinegger the real property on which the building was situated.

### A. The Terms of the Lease

The 1972 lease agreement ("lease") provided for an initial term of 25 years, plus two ten-year extensions. The lease required Prime to pay rent annually, consisting of a base rent

> equal to the amount of money needed each year to amortize the total amount of the permanent mortgage placed on the demised premises over a period of twenty (20) years ...; in no event shall the annual rent be less than One Hundred Ninety–One Thousand ($191,000) Dollars,

plus a percentage of Prime's receipts equal to

---

* Honorable Betty B. Fletcher, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

fifteen (15%) percent of gross receipts received from the rental of lodging facilities in excess of Five Hundred Eighty–Five Thousand ($585,000) Dollars per year (Sixty–Five Hundred ($6,500) Dollars per rental unit) less all applicable use and occupancy taxes.

The lease required Prime to submit to Steinegger monthly statements as to its gross receipts from the rental of lodging facilities, and to grant Steinegger access to Prime's books and accounts "at reasonable times after notification." Whenever Prime's gross room revenues exceeded $585,000, its monthly statements were to reflect the "percentage rental earned for the preceding month." The lease provided that if any question were to arise concerning the "accuracy of any statements, it shall be settled as conveniently as possible between the parties, but not so as to unreasonably interrupt the operation of Lessee's business."

The lease gave Steinegger, upon the occurrence of an event of default, the right to terminate the lease. It defined default as, *inter alia*, any failure on the part of the lessee to comply with any term, provision or covenant of the lease and the concomitant failure to cure such noncompliance within ten days of written notice. As discussed in Part II.B. below, the lease also provided that, in certain circumstances, a party in default would pay the other party's attorney's fees.

In January 1973, the parties agreed to an amendment to the lease in order to induce the third-party mortgagee to make a loan to Steinegger. Steinegger and Prime agreed that the May 1972 lease would be deemed amended to conform to, and be controlled by, the following provision in the mortgage:

> Mortgagor will not enter into any lease, sublease, license, concession or other agreement for use, occupancy or utilization of space in the Premises which provides for a rental or other payment for such use, occupancy or utilization based in whole or in part on the income or profits derived by any person from the property leased, used, occupied or uti-

lized, or which would require the payment of any consideration which would not be within the definition of "rents from real property" as that term is defined in Section 856(d) of the Internal Revenue Code of 1954....

## B. *The Mid–1970's Dispute and the Decision in "Prime I"*

A certificate of occupancy for the motel was issued in July 1974, and Prime's rental obligations began on January 1, 1975. Soon thereafter, disputes arose with respect to, *inter alia*, the amount of rent due under the lease. Prime took the position that the 1973 amendment relieved it of any obligation to pay Steinegger any percentage of its income from room rentals. In May 1976, Prime ceased to pay any rent to Steinegger, though it did make certain payments directly to the mortgagee. In response, Steinegger sent Prime a notice to quit the premises, which is a prerequisite to summary eviction proceedings.

Prime promptly brought suit in the district court (*"Prime I"*), seeking an adjudication of its obligations under the lease. It asked, *inter alia*, that the court reform the lease to provide (a) that Prime was not required to pay Steinegger any rent above the amount Steinegger needed to pay the mortgagee, and (b) that Prime was not required to make any payment of a percentage of its gross receipts from room rentals. Steinegger counterclaimed, charging, *inter alia*, that Prime had improperly refused to submit monthly statements as to room rental income and to pay to Steinegger the required percentage of that income. Steinegger asked for relief in the form of "an accounting of the gross room rentals and payment of the percentage rental due," and an order from the court directing Prime to pay "the rentals in arrears."

After a bench trial in 1981, the district court, T.F. Gilroy Daly, *Judge*, ruled that Prime was not entitled to reformation of the lease and was required to pay Steinegger the base amount of rent plus the percentage provided in the lease. The court stated as follows:

1. The term of the Lease between the parties is twenty-five years. The rental due the lessor is that amount necessary to amortize the mortgage due [the mortgagee] over a period of twenty years payable each month at the rate of $17,701.96 per month during the first twenty years of the lease term. The rent due from the lessee during the last five years of the term is $15,916.66 per month.

2. The lessee shall also pay to the lessor during the original term of the Lease and any extensions thereof fifteen (15%) percent of gross receipts received from the rental of lodging facilities in excess of Five Hundred Eighty–Five Thousand ($585,000) Dollars per year (Sixty–Five Hundred ($6,500) Dollars per rental unit) less all applicable use and occupancy taxes.

Memorandum of Decision dated July 31, 1981 ("1981 Decision"), at 9–10. The court ordered Prime to pay Steinegger the base and percentage rents "due pursuant to paragraphs 1 and 2 above plus an amount of interest to be determined by the Court in the event the parties cannot agree." *Id.* at 10. The *Prime I* court did not order an accounting.

Judgment was entered in August 1981. Though Prime filed a notice of appeal, the matter was then settled.

### C. *The Present Action*

In September 1981, Prime entered into an agreement with one Vashu Ramsinghani whereby Prime agreed to assign its leasehold interest in the motel to Ramsinghani. As required by the lease, Prime then sought Steinegger's consent to the assignment. Following the exchange of numerous letters with respect to, *inter alia*, Ramsinghani's experience and financial condition, Steinegger withheld consent on the ground that it did not have enough information on which to base a decision. In May 1982, Prime and Ramsinghani commenced the present action in Connecticut state court, contending that Steinegger's withholding of its consent was unreasonable and that Steinegger had tortiously interfered with the contract between Prime and Ramsinghani.

Steinegger removed the action to the district court. In 1985, following Prime's production of financial information in compliance with a discovery order, Steinegger filed its rent counterclaim, alleging that Prime had been underpaying the percentage rents due under the lease. Steinegger challenged the methodology Prime had used to calculate those percentages, asserting that Prime had improperly excluded rents it received for rooms that were designed to be and were delivered to Prime as guest rooms, but which were treated by Prime as public rooms; that Prime reported only 97% of its total guest room income; and that Prime improperly deducted a portion of the guest room revenues for in-room movies although guests were not charged for those movies. Steinegger sought, *inter alia*, damages and an accounting. Against this claim, Prime asserted as an affirmative defense, *inter alia*, that any claim for additional percentage rents was barred by principles of res judicata on the ground that that issue had been litigated in *Prime I*.

In June 1987, relying on the charges asserted in its rent counterclaim, Steinegger served on Prime a notice to quit the premises pursuant to Conn.Gen.Stat. § 47a–23(a), as a precursor to eviction proceedings. Prime refused to vacate, and Steinegger commenced a summary eviction proceeding in state court in July 1987, seeking to terminate the lease and regain immediate possession of the property. That action was removed by Prime to the district court, where it was consolidated with the present action, *i.e.*, the action commenced by Prime in 1982.

Eventually, a bench trial was held before Chief Judge Burns, who ruled against Prime on its own claims and on most of Steinegger's counterclaims. In a Memorandum of Decision dated August 21, 1989 ("1989 Decision"), the court ruled that Steinegger's withholding of consent to the proposed assignment was not unreasonable and did not constitute tortious interference with the contract between Prime and Ram-

singhani. The court denied Steinegger's request for attorney's fees expended in defending the claim.

As to Steinegger's counterclaim against Prime for underpayment of rent, the court held that the decision in *Prime I* did not bar litigation of Steinegger's claim that Prime's methods of calculating the percentage portion of the rent due was improper. The court noted that Steinegger could not have challenged Prime's methodology in *Prime I* because "[a]t no time prior to the satisfaction of judgment in *Prime I* had any payments been made to Steinegger from which he could determine that an actual controversy existed over the computation of the percentage rents." 1989 Decision at 37. Chief Judge Burns also noted that Judge Daly had not ordered an accounting in *Prime I* and had neither supervised the methodology used in determining the amount to which Steinegger was entitled nor offered the court's assistance in determining the amount due. Thus, she concluded that Prime's accounting methodology had not been adjudicated in *Prime I*. As to the merits of the rent counterclaim, Chief Judge Burns found that Prime owed Steinegger $161,542.05 in unpaid percentage rents, and she awarded Steinegger attorney's fees expended in the successful prosecution of this counterclaim. She denied Steinegger prejudgment interest on the damages award.

The court dismissed Steinegger's claim for summary eviction, stating that, contrary to Steinegger's assertions, there was no basis for finding that Prime's conduct amounted to larceny or fraud, and concluding that the parties had merely "disagreed over an accounting mechanism used to police a lease provision." Noting that "[t]he lease itself provides that such disagreements are to be resolved as conveniently as possible, without unreasonable interruption of Prime's business operations," the court concluded that requested eviction of Prime was unwarranted. 1989 Decision at 42.

## II. DISCUSSION

Prime has not challenged the district court's dismissal of its claims against Stein-

egger but has appealed only from so much of the judgment as awards Steinegger damages and attorney's fees on the rent counterclaim. Steinegger has cross-appealed from so much of the judgment as (a) denied it prejudgment interest on the $161,542.05 awarded on the rent counterclaim, (b) denied it attorney's fees for the successful defense against Prime's claims, and (c) dismissed its action to evict Prime. For the reasons below, we find no merit in the parties' arguments in support of their respective appeals, with the possible exception of Steinegger's contention that it should have been awarded prejudgment interest on the unpaid rents to which it was entitled.

### A. *Issues Relating to the Counterclaim for Underpayment of Rent*

Prime challenges the district court's award of damages and attorney's fees to Steinegger on the rent counterclaim on the ground that any claim with respect to nonpayment of the percentage portion of the rent was barred by principles of res judicata and collateral estoppel in light of *Prime I*. For its part, Steinegger challenges so much of the court's decision with respect to the rent counterclaim as denied it prejudgment interest. We find no merit in Prime's arguments but remand to the district court for further proceedings with respect to the matter of prejudgment interest.

### 1. The Res Judicata and Collateral Estoppel Defenses

 The doctrine of res judicata, or claim preclusion, generally prevents the litigation of any claim or ground of recovery that was available to a party in a prior action, whether or not the prior judgment actually determined that claim or ground. *See, e.g., Balderman v. United States Veterans Administration*, 870 F.2d 57, 62 (2d Cir.1989); *Teltronics Services, Inc. v. L M Ericsson Telecommunications, Inc.*, 642 F.2d 31, 35 (2d Cir.), *cert. denied*, 450 U.S. 978, 101 S.Ct. 1511, 67 L.Ed.2d 813 (1981). The fact that "both suits involved 'essentially the same course of wrongful conduct' is not decisive." *Lawlor v. National*

*Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983).

While a previous judgment may preclude litigation of claims that arose "prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. National Screen Service Corp.,* 349 U.S. at 328, 75 S.Ct. at 868. Thus, when the parties have entered into a contract to be performed over a period of time and one party has sued for a breach, res judicata will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first suit; it will not, however, bar a subsequent suit for any breach that had not occurred when the first suit was brought. *See tenBraak v. Waffle Shops, Inc.,* 542 F.2d 919, 924 n. 6 (4th Cir.1976) (dictum) ("an action for rent not due at the commencement of a former action for rent is not barred by the former judgment"); *Klein v. John Hancock Mutual Life Ins. Co.,* 683 F.2d 358, 360 (11th Cir.1982) (judgment based on long-term continuing contract, which is subject to intermittent breach during its term, does "not automatically bar a later suit for a second, identical breach"); *Balderman v. United States Veterans Administration,* 870 F.2d at 62 (employee's claim for employment termination in violation of tenure rights not barred by judgment entered in earlier action brought prior to that termination). *See generally* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4409, at 74 (1981) ("[t]he dimensions of the creditor's claim or cause of action fluctuate with the balance in the account—whenever suit is brought it must include the entire balance then due"); *id.* at 75 ("Under a single five year lease providing for sixty monthly installments of rent, for example, a suit could be brought for each unpaid installment as it fell due; a single suit, however, must include all unpaid installments due when it is filed.").

In the present case, Steinegger sought recovery in its rent counterclaim only for underpayments from 1981 forward. Plainly, this counterclaim was not available to Steinegger in 1976 when *Prime I* was commenced (nor even in mid–1981 when it was decided). Accordingly, the district court properly ruled that the rent counterclaim was not barred by res judicata.

Nor was Steinegger's rent counterclaim barred by the doctrine of collateral estoppel, or "issue preclusion." That doctrine prevents the parties' relitigation of an issue that was (a) raised, (b) litigated, and (c) actually decided by a judgment in their prior proceeding, regardless of whether the two suits are based on the same cause of action. *See, e.g., Lawlor v. National Screen Service Corp.,* 349 U.S. at 326, 75 S.Ct. at 867; *Balderman v. United States Veterans Administration,* 870 F.2d at 62.

Though Prime contends that "[t]he accounting claim raised in [*Prime I*] put into issue the methodology Prime used to calculate room revenues," this defense founders on the second and third elements of issue preclusion. While it might be argued that the issue of Prime's methodology in calculating the percentage rents was raised by Steinegger's request in *Prime I* for an accounting, it does not appear that the issue of methodology was actually litigated, and it is clear that it was not actually decided. With respect to the percentage rents issue, the *Prime I* court ruled only that the 1973 amendment to the lease did not relieve Prime of the obligation to pay rent on the agreed percentage basis; beyond quoting the percentage provision of the lease, that court did nothing more than order Prime to "pay to the defendants those monies." The *Prime I* court did not order an accounting and did not express any view on the methodology issue.

Accordingly, there is no merit in Prime's suggestion that principles of collateral estoppel barred Steinegger's present rent counterclaim.

## 2. The Denial of Prejudgment Interest

 Steinegger contends that since it was entitled to recover for underpayment of the rents due under the lease, the district court should also have awarded it prejudgment interest on the sums due. For the reasons below, we remand for further consideration of this matter.

Under Connecticut law, prejudgment interest "may be recovered and allowed in civil actions … as damages for the detention of money after it becomes payable." Conn.Gen.Stat. § 37–3a. Whether such interest is awarded is "primarily an equitable determination and a matter within the discretion of the trial court." *Nor'easter Group, Inc. v. Colossale Concrete, Inc.*, 207 Conn. 468, 482, 542 A.2d 692, 700 (1988); *State v. Stengel*, 192 Conn. 484, 472 A.2d 350, 352 (1984) (per curiam). The courts have construed the statute "to make the allowance of interest depend upon 'whether the detention of the money is or is not wrongful under the circumstances.'" *Alderman v. RPM of New Haven, Inc.*, 20 Conn.App. 566, 569, 568 A.2d 1068, 1070 (1990) (quoting *Cecio Bros., Inc. v. Feldmann*, 161 Conn. 265, 275, 287 A.2d 374, 379 (1971)); *Simonetti v. Lovermi*, 15 Conn.App. 722, 728, 546 A.2d 331, 334 (1988); *see State v. Stengel*, 472 A.2d at 352 ("Whether … enrichment was unjust is the crux of the determination that we normally entrust to those vested with discretion to grant or to deny interest."). Other factors to be considered include whether the sum recovered was a liquidated amount, *Sperry v. Moler*, 3 Conn. App. 692, 491 A.2d 1115, 1117 (1985), and whether the party seeking prejudgment interest has "diligently presented" the claim throughout the course of the proceedings, *Alderman v. RPM of New Haven, Inc.*, 568 A.2d at 1071. The fact that there existed a legitimate dispute between the parties does not mean that an award of prejudgment interest is not appropriate. *Harris Calorific Sales Co. v. Manifold Systems, Inc.*, 18 Conn.App. 559, 566, 559 A.2d 241, 244–45 (1989); *see State v. Stengel*, 472 A.2d at 352.

In the present case, the district court made no findings and gave no explanation with respect to its denial of prejudgment interest, and the reason for denying Steinegger such interest in the present case is not clear to us. While the granting or denial of such interest is committed to the court's sound discretion, the uninformative denial prevents us from determining whether discretion has been properly exercised.

Accordingly, we vacate so much of the judgment as denied Steinegger prejudgment interest, and we remand to permit the district court to consider the matter further or to state its reasons for the denial.

### B. *Steinegger's Other Contentions*

Steinegger contends that the district court erred in dismissing its claim for summary eviction of Prime and in denying Steinegger attorney's fees in connection with its successful defense of Prime's claims. We find no merit in either contention.

### 1. The Claim for Summary Eviction

 Steinegger contends that under Connecticut law it is entitled to have summary process to evict a tenant if the tenant has failed to pay the appropriate rent, and that since the district court ruled that Prime breached the lease through its miscalculation of the percentage rents due, this ruling in and of itself "proved defendants' entitlement to a judgment of possession," and the court should have upheld its claim for summary eviction of Prime. We see no basis for reversal.

Connecticut's summary eviction statute provides, in pertinent part, that a lessor of real property who wishes to regain possession of the premises on account of "nonpayment of rent" may give the lessee eight days' notice to quit the property. Conn. Gen.Stat. § 47a–15a; *see id.* § 47a–23(a). If, after the expiration of the eight days, the lessee has not quit possession, the lessor may file a summary process complaint to obtain immediate possession, *id.* § 47a–23a, and "[i]f, on the trial of a summary process complaint it is found that the

defendant is the lessee of the complainant and holds over after the termination of the lease or rental agreement ... and that notice to quit has been given as provided in this chapter, yet that the defendant holds possession or occupancy after the expiration of the time specified in such notice to quit, ... the court shall forthwith enter judgment that the complainant recover possession," *id.* § 47a–26d. In the summary process suit, then, the lessor must prove the underlying allegations in order to obtain a judgment of eviction. *Housing Authority of East Hartford v. Hird,* 13 Conn. App. 150, 155, 535 A.2d 377, 380–81, *app. denied,* 209 Conn. 825, 552 A.2d 433 (1988).

In the present case, the district court apparently found that Steinegger did not adequately prove that it was entitled to summary process under the statute. Though Steinegger claimed entitlement to such process because of Prime's "non-payment of rent," the court viewed Prime's conduct not as nonpayment but rather as an underpayment based on "[t]he parties disagree[ment] over an accounting mechanism used to police a lease provision." We see no clear error in the district court's finding that there had not been nonpayment within the meaning of the statute.

2. The Claim for Attorney's Fees

 Finally, Steinegger contends that it was entitled to an award of attorney's fees under the lease for its successful defense of Prime's claims. The lease provided, in pertinent part, that

[i]f, on account of any breach or default by Lessee in Lessee's obligations under the terms and conditions of this lease, it shall become necessary or appropriate for Lessor to employ or consult with an attorney concerning or to enforce or defend any of Lessor's rights or remedies hereunder, Lessee agrees to pay any reasonable attorney's fees.

The district court noted that under this provision, "fees are appropriate only when the *lessee* breaches or defaults under the terms of the lease." 1989 Decision at 31 (emphasis in original). Finding that the claims of Prime and Steinegger were "nei-

ther mutually dependent nor inextricably intertwined," *id.* at 32, the court ruled that the lease did not authorize an award to Steinegger for its defense of Prime's claims because those claims were premised on an alleged breach of the agreement by Steinegger, the lessor. We see no error in this ruling.

In construing the terms of a lease, the court is generally required to give the document's language its ordinary meaning unless a technical or special meaning is clearly intended. *See, e.g., Hatcho Corp. v. Della Pietra,* 195 Conn. 18, 485 A.2d 1285, 1287 (1985); *Ingalls v. Roger Smith Hotels Corp.,* 143 Conn. 1, 118 A.2d 463, 465 (1955). The language and placement of the lease's phrase "on account of any breach or default by Lessee in Lessee's obligations under the terms and conditions of this lease," plainly sets the boundaries of the parties' agreement as to the lessee's obligation to pay the lessor's attorney's fees. The lease thus gives the lessor the right to recover attorney's fees only when it is forced to litigate because of a breach by the lessee.

Prime's suit did not involve any alleged breach by Prime. Rather, it alleged that the withholding by Steinegger of consent to Prime's assignment of the lease to Ramsinghani constituted (1) a breach by Steinegger, and (2) a tort by Steinegger. The issues raised by these claims were independent of any issues as to Prime's performance of its own obligations to pay rent. We conclude that the court properly denied Steinegger's claim for attorney's fees in connection with the defense of Prime's claims.

CONCLUSION

We have considered all of the parties' arguments on these appeals and, except as indicated above, have found them to be without merit. The judgment is vacated insofar as it denied Steinegger prejudgment interest; as to that issue the matter is remanded to the district court for further proceedings not inconsistent with this

opinion. In all other respects, the judgment is affirmed.

Costs to defendants.