**COMPUTER ASSOCIATES INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**ALTAI, INC., Defendant–Appellee.**

**No. 1090, Docket 93–7957.**

United States Court of Appeals, Second Circuit.

April 7, 1994.

Present: MAHONEY, WALKER, CAMPBELL,* Circuit Judges.

---

* The Honorable Levin H. Campbell, United States Circuit Judge for the First Circuit, sitting by designation.

## ORDER

This appeal from the United States District Court for the Eastern District of New York, George C. Pratt, *Circuit Judge*,[1] came on to be heard on the transcript of record from said district court, and was argued by counsel. On consideration of the briefs, appendix, record, and oral argument in this appeal, it is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Supreme Court of Texas a Certificate in the form attached, together with a complete set of the briefs, appendix, and record filed with this Court by the parties. This panel retains jurisdiction so that, once we receive a response from the Supreme Court of Texas, we may dispose of all the issues raised in this appeal. The parties are hereby ordered to bear equally such fees and costs, if any, as may be requested by the Supreme Court of Texas.

## APPENDIX

## UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 93–7957

COMPUTER ASSOCIATES INTERNATIONAL, INC.,
*Plaintiff–Appellant,*

—against—

ALTAI, INC.,
*Defendant–Appellee.*

Certificate to the Supreme Court of Texas pursuant to Tex.R.App.P. 114(a) (West 1993) (permitting certification of questions of state

law for which there is no controlling precedent in the decisions of the Supreme Court of Texas).

In January 1984, Claude F. Arney, III left the Texas offices of his employer of five years, Computer Associates International, Inc. ("CA"), a developer of computer software, to go to work for a competitor, Altai, Inc. ("Altai"). *See Computer Assocs. Int'l v. Altai, Inc.,* 775 F.Supp. 544, 553 (E.D.N.Y. 1991) ("*Altai I,*"), *aff'd in part, vacated in part, and remanded,* 982 F.2d 693 (2d Cir. 1992). When Arney left, he took with him copies of the computer source code [1] listings for two versions of a CA program known as ADAPTER (a component of another CA program called CA–SCHEDULER), in knowing violation of a CA employment agreement which he had signed that prohibited the retention of such materials. *Id.* at 552–53. Arney then undertook to write a program for Altai known as OSCAR. The first version of this program, which performs a task similar to CA's ADAPTER, was designated OSCAR 3.4. Arney copied approximately thirty percent of the source code comprising OSCAR 3.4 from the source code of ADAPTER. *Id.* at 552. Other than Arney, no one at Altai knew that Arney possessed the ADAPTER source code or that he had copied that code in creating OSCAR 3.4. *Id.* at 554. From 1985 to August 1988, Altai used OSCAR 3.4 in several of its computer programs that competed with CA–SCHEDULER. *Id.* at 552, 554.

In late July 1988, CA first learned that Altai might have copied the ADAPTER program. *Id.* at 554. After confirming its suspicions, CA secured copyrights on versions 2.1 and 7.0 of CA–SCHEDULER. *Id.* In August 1988, CA brought suit against Altai in federal district court, invoking diversity jurisdiction.[2] *See* 28 U.S.C. § 1332 (1988).

---

**1.** The Honorable George C. Pratt, United States Circuit Judge for the Second Circuit, sitting by designation.

**1.** "Source code" refers to "the literal text of a [computer] program's instructions written in a particular programming language," *Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 835 (10th Cir.1993), such as COBAL, FORTRAN, BASIC, or EDL. Once the source code has been

completed, it is translated or "compiled" into "object code," which is "the binary language comprised of zeros and ones through which the computer directly receives its instructions." *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 698 (2d Cir.1992).

**2.** CA is a Delaware corporation with its principal place of business in Garden City, New York. Altai is a Texas corporation, and has its principal

CA alleged that Altai had infringed CA's copyright in ADAPTER and had misappropriated CA's trade secrets. *Altai I*, 775 F.Supp. at 554. Upon receiving CA's complaint, Altai immediately investigated the allegations and learned that Arney had copied portions of the ADAPTER code. *Id.* James P. Williams, an employee of Altai who became its president on October 31, 1988, reviewed with Arney which portions of OSCAR Arney had copied and which he had developed independently. In conducting this review, Arney again consulted the ADAPTER code, but neither Williams nor any of Altai's other programmers ever examined the ADAPTER code, which was locked away before Altai began rewriting OSCAR. *Id.*

After consulting counsel about how to proceed, Williams organized an operation to rewrite the OSCAR program. Working primarily from a different Altai program, Williams wrote descriptions of various services that the rewritten OSCAR would perform. *Id.* Williams then instructed Altai's programmers, none of whom had worked on OSCAR 3.4, to write appropriate code to obtain those services. In doing so, the programmers were forbidden to contact Arney or to refer to OSCAR 3.4. *Id.* The resulting program was designated OSCAR 3.5. Upon its completion, Altai shipped OSCAR 3.5 to its new customers, and also provided OSCAR 3.5 as a "free upgrade" to all customers who had purchased OSCAR 3.4. *Id.*

After a bench trial, the district court found that Altai's OSCAR 3.4 computer program had infringed the ADAPTER component of CA's copyrighted computer program CA-SCHEDULER. *Id.* at 558. The court awarded CA a total of $364,444 in actual damages and apportioned profits on copyright claims stemming from OSCAR 3.4. *Id.* at 572. The district court also determined, however, that OSCAR 3.5 was neither substantially similar to nor copied from ADAPTER, and accordingly denied CA relief on its copyright claims regarding that version of Altai's program. *Id.* at 561–62. Finally, although noting that Texas state law would govern CA's trade secret misappropriation

claim, *id.* at 566, the district court concluded that CA's misappropriation claim against Altai had been preempted by the federal Copyright Act. *Id.* at 563–66. While recognizing that the torts of misappropriation and copyright infringement might be distinct in some cases, the district court reasoned that on the facts of this case, the claims "boil[ed] down to the same thing—a right of action for the unauthorized reproduction of, and preparation of derivative works based on, ADAPTER." *Id.* at 564. Because both claims involved a copyrightable work, the district court concluded that "all claims concerning copying [are] governed, exclusively, by federal [copyright] law." *Id.* at 565.

Altai did not perfect an appeal from the award of damages with respect to OSCAR 3.4, but CA appealed the denial of relief with respect to OSCAR 3.5. *See Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 696–97 (2d Cir.1992) ("*Altai II* "). We affirmed the district court's ruling that OSCAR 3.5 did not infringe CA's copyright in ADAPTER, *id.* at 714–15, and also agreed with the district court that Texas law would govern CA's trade secret misappropriation claims (if they were not preempted by federal law). *Id.* at 718. As to preemption, we noted that if CA's misappropriation claims involved an "extra element" that was not included in its copyright claims and rendered the misappropriation claims "qualitatively different" from the copyright claim, the misappropriation claims would not be preempted. *See id.* at 716. Concluding that such an element, beyond mere copying, might be established on the basis that Altai had constructive notice of misappropriation with respect to OSCAR 3.4, *see id.* at 718–19, or that Altai's conceded knowledge of misappropriation when it developed OSCAR 3.5 may have resulted in the embodiment of CA trade secrets therein despite the preventive measures taken by Altai, *see id.* at 719–21, we remanded for further consideration of CA's misappropriation claims. *Id.* at 720–21.

On remand, the parties briefed the trade secret issues under Texas law. Altai also asserted the affirmative defense, first invoked in its answer and also presented in its

---

place of business in Arlington, Texas. *See Altai I*, 775 F.Supp. at 549.

post-trial memorandum, that CA's claims were barred by the applicable Texas statute of limitations, Texas Civil Practice & Remedies Code Ann. § 16.003(a) (Vernon 1986).[3] *See Computer Assocs. Int'l v. Altai, Inc.*, 832 F.Supp. 50, 51–52 (E.D.N.Y.1993) ("*Altai III* "). That provision states, in pertinent part:

> A person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, [or] taking or detaining the personal property of another ... not later than two years after the day the cause of action accrues.

The Texas Court of Civil Appeals (now designated the Court of Appeals) has applied article 5526 of the Texas Civil Statutes, the forerunner of § 16.003, to claims involving the misappropriation of trade secrets. *See Reynolds–Southwestern Corp. v. Dresser Indus.*, 438 S.W.2d 135, 140 (Tex.Civ.App.1969) (applying art. 5526 to trade secret claim); *see also Coastal Distrib. Co. v. NGK Spark Plug Co.*, 779 F.2d 1033, 1038 (5th Cir.1986) (same) (collecting cases).

Under Texas law, the statute of limitations on tort claims generally begins to run when "the wrongful act effects an injury, regardless of when the plaintiff learned of such injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). This general rule of accrual applies unless modified by the "discovery rule," which, when applicable, pro-

vides that the period of limitations for a tort action "run[s] from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988) (citing *Gaddis v. Smith*, 417 S.W.2d 577, 578 (Tex.1967)).

The district court declined to address the merits of CA's misappropriation claims on remand, instead dismissing them as barred under § 16.003(a). Although the district court had earlier opined that CA's claims for misappropriation of trade secrets would be subject to the discovery rule under Texas law, *see Altai I*, 775 F.Supp. at 566, after further consideration upon remand, the court declined to apply the discovery rule in this case. The court noted that no Texas court had unambiguously applied the discovery rule to claims involving the misappropriation of trade secrets. *Altai III*, 832 F.Supp. at 53. Because the Supreme Court of Texas had applied the rule only under limited circumstances, each time emphasizing the special policy considerations warranting application of the rule in the case at hand, the district court "decline[d] to make an unprecedented expansion of the discovery rule by applying it to the facts of this case." *Id.* at 54. The court also noted, however, its inability under Texas R.App.P. 114(a) to certify this issue to the Supreme Court of Texas, *id.* at 53–54, and added: "If this matter comes to the attention of the second circuit, they may feel it appropriate to certify the ques-

---

**3.** A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). CA originally brought this action in the United States District Court for the District of New Jersey, whence it was transferred by stipulation to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) (1988). *See Altai I*, 775 F.Supp. at 566. Whether such a transfer is initiated by the plaintiff or the defendant, "the transferee court must follow the choice of law rules that prevailed in the transferor court." *Ferens v. John Deere Co.*, 494 U.S. 516, 519, 110 S.Ct. 1274, 1277, 108 L.Ed.2d 443 (1990). Thus, New Jersey's choice of law rules determine which state's statute of limitations applies. New Jersey has abandoned the prevalent rule that the statute of limitations is a procedural matter and therefore the forum state's statute of limitations is applicable, regardless of which state's substan-

tive law applies. *See Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412, 415–18 (1973); *Warner v. Auberge Gray Rocks Inn, Ltee.*, 827 F.2d 938, 940–41 (3d Cir.1987). Instead, New Jersey applies the interest-based test normally reserved for determining which state's substantive law will apply. *See Schum v. Bailey*, 578 F.2d 493, 495 (3d Cir.1978). In this case, the acts at issue occurred in Texas and involved the Texas offices of a Delaware corporation (CA) and a Texas corporation (Altai). Under these circumstances, we have little difficulty in concluding that New Jersey has no significant interest in applying its own statute of limitations, and would instead have recourse to the Texas statute of limitations. *See Seals v. Langston Co.*, 206 N.J.Super. 408, 502 A.2d 1185, 1187–88 (App.Div.), *certification denied*, 104 N.J. 386, 517 A.2d 392 (1986); *Washington v. Systems Maintenance Corp.*, 260 N.J.Super. 505, 616 A.2d 1352, 1354–56 (Law Div. 1992).

tion to the Texas Supreme Court for an authoritative disposition of the issue." *Id.* at 54.

Altai conceded at trial that CA did not know or have reason to know of Altai's alleged misappropriation until 1988. Thus, if the discovery rule applied in this case, CA's misappropriation claims would be timely under Texas law. However, the district court concluded that because the discovery rule did not apply, and because the allegedly wrongful act occurred in 1984 (four years before CA filed suit) when Arney began copying CA's ADAPTER codes into OSCAR 3.4, the statute of limitations had run and CA's claim was barred. *Id.* at 52, 54.

On appeal, CA contends that the district court erred in declining to apply the discovery rule in this case. CA argues that: (1) the Texas Court of Civil Appeals applied the discovery rule to a claim arising from the misappropriation of trade secrets in *Reynolds–Southwestern Corp.*, 438 S.W.2d at 140; (2) precedent of the Supreme Court of Texas supports extension of the discovery rule in this instance because the misappropriation of trade secrets is inherently difficult for a potential plaintiff to discover, *see Willis*, 760 S.W.2d at 645 ("This court has adopted the discovery rule in cases ... in which it is difficult for the injured party to learn of the negligent act or omission.") (collecting cases); (3) the Supreme Court of Texas presumably would follow the lead of the vast majority of states by adopting the discovery rule for trade secrets; and (4) those Texas cases that do not apply the discovery rule are distinguishable because they involved different contexts and policy considerations from those implicated by claims for the misappropriation of trade secrets. *See, e.g., Moreno v. Sterling Drug, Inc.*, 787 S.W.2d at 354–55 (wrongful death); *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 776 (Tex.Ct.App.1993) (physical injuries). Finally, CA also argues that any construction of § 16.003(a) to bar misappropriation claims before they become discoverable would contravene the "open courts" provision of the Texas Constitution, Tex. Const. art. I, § 13 (Vernon 1984), which has been interpreted to prohibit statutes of limitations that require "a person whose injuries are not immediately discoverable" to sue "during the period of undiscoverability." *Nelson v. Krusen*, 678 S.W.2d 918, 923 (Tex. 1984).

Altai responds that: (1) *Reynolds–Southwestern*, which is in any event not a dispositive statement of Texas law, is distinguishable because, unlike this case, *Reynolds–Southwestern* involved a claim of fraud that overlapped the claim for misappropriation of trade secrets; (2) the discovery rule has primarily been applied by Texas courts to breaches of fiduciary duty by licensed professionals; (3) its application in other cases has been limited to more inherently undiscoverable wrongs than the alleged misappropriation of ADAPTER; and (4) CA's failure to discover the alleged misappropriation resulted from its own laxity in safeguarding its trade secrets. Altai also points out that the "open courts" constitutional provision has only been invoked in *Nelson* and other Texas cases to invalidate a specific medical malpractice limitations provision that provided an inflexible two-year limitations period regardless of the discoverability of the injury inflicted by malpractice.

The decision to extend the discovery rule to a type of claim to which it has not previously been applied by the Supreme Court of Texas requires "careful[ ] consider[ation of] opposing policy considerations," *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976), weighing concerns regarding "the assertion of claims within a reasonable period," *id.*, against general considerations of justice. Resolution of this issue thus calls for particular sensitivity to state policy concerns and special expertise in Texas law. Accordingly, we conclude that this decision is best left to the Supreme Court of Texas. *Cf. Tennimon v. Bell Helicopter Textron, Inc.*, 823 F.2d 68, 72 (5th Cir.1987) (per curiam) ("[I]f any court were to hold that the discovery rule is an exception to this seemingly unambiguous declaration of the Texas Legislature, it should be a Texas court in the first instance, not a federal court sitting in a diversity case.") (discussing § 16.003(b)).

Accordingly, because CA's claims raise unsettled and significant questions of Texas law

that control the outcome of this case, *see* 2d Cir.R. § 0.27, we certify the following questions of law to the Supreme Court of Texas:

1. Does the discovery rule exception to § 16.003(a) apply to claims for misappropriation of trade secrets?

2. If not, would the application to such claims of the two-year limitations period provided by § 16.003(a) contravene the "open courts" provision of article I, § 13 of the Texas Constitution?

The foregoing is hereby certified to the Supreme Court of Texas pursuant to Tex. R.App.P. 114(a) as ordered by the United States Court of Appeals for the Second Circuit.

Dated at New York, New York, this 7th day of April, 1994.

GEORGE LANGE, III
Clerk, United States Court of
Appeals for the Second Circuit
By: CAROLYN CLARK CAMPBELL
Carolyn Clark Campbell
Chief Deputy Clerk