### COMPUTER ASSOCIATES INTERNATIONAL, INC., Plaintiff,

v.

### ALTAI, INC., Defendant.

### No. 89–CV–0811 (DRH).

United States District Court, E.D. New York.

June 17, 1996.

Weil, Gotshal & Manges, by Stephen D. Kahn, New York City, for Plaintiff.

Ingersoll & Bloch, Chartered, The Sherman House, by Susan G. Braden, Washington, D.C., for Defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Currently pending before the Court in the above-captioned case is a motion by Defendant Altai, Inc. ("Defendant") to enjoin Plaintiff Computer Associates, Inc. ("Plaintiff") from continuing to maintain an action filed by Plaintiff in France (the "French action"). For the reasons set forth below, Defendant's motion is denied.

## PROCEDURAL BACKGROUND

### I. Plaintiff's United States Action

Plaintiff, a Delaware corporation with its principal place of business in New York, brought this copyright infringement and trade secret misappropriation action against Defendant, a Texas corporation with its principal place of business in Texas, in August 1988. Plaintiff alleged, *inter alia*, that Defendant had copied substantial portions of Plaintiff's SCHEDULER computer program into Defendant's own OSCAR 3.4 software program. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 775 F.Supp. 544, 549, 552–53 (E.D.N.Y.1991), *aff'd in part and vacated in part*, 982 F.2d 693 (2d Cir.1992). Once suit was brought, Defendant rewrote parts of OSCAR 3.4 and replaced it with OSCAR 3.5. (Pl.'s Mem. at 4; Def.'s Reply Mem. at 8.) Thereafter, Plaintiff amended its complaint to assert claims of copyright infringement with regard to OSCAR 3.5. (Def.'s Reply Mem. at 8.)

By Memorandum and Order entered August 12, 1991, the Honorable George C. Pratt found that Defendant's OSCAR 3.4 computer program had infringed Plaintiff's copyrighted SCHEDULER program and awarded $364,-444 in actual damages plus pre-judgment in-

terest.[1] *Computer Assocs.*, 775 F.Supp. at 560–61, 571–73. With respect to Plaintiff's second claim, Judge Pratt found that Defendant's OSCAR 3.5 program was not substantially similar to a portion of SCHEDULER called ADAPTER and, therefore, did not infringe Plaintiff's copyrights. *Id.* at 561–62, 573. Finally, Judge Pratt concluded that Plaintiff's state law trade secret misappropriation claim had been preempted by the federal Copyright Act. *Id.* at 563–64.

On December 17, 1992, the Second Circuit affirmed the district court's findings and judgment as to Plaintiff's copyright claims but vacated its holding that Plaintiff's state law trade secret claim was preempted by federal copyright law. Therefore, the circuit court remanded the case to the district court for consideration of the trade secret claim. *Computer Assocs.*, 982 F.2d 693, 712–15, 719–21. On August 20, 1993, Judge Pratt ruled that under Texas law, Plaintiff's trade secret claim was barred by the two year statute of limitations. *Computer Assocs. Int'l Inc. v. Altai, Inc.*, 832 F.Supp. 50, 54 (E.D.N.Y. 1993), *aff'd*, 61 F.3d 6 (1995). Plaintiff appealed that ruling and the Second Circuit certified the question of Texas law to the Supreme Court of that state. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 22 F.3d 32, 37 (2d Cir.1994). On April 3, 1996, following the decision of the Supreme Court of Texas on March 14, 1996, the Second Circuit issued a mandate affirming the decision of Judge Pratt that dismissed Plaintiff's remaining trade secret claim.[2] *Computer Assocs. Int'l,*

*Inc. v. Altai, Inc.*, No. 93–7957, 1996 WL 154622, at *1 (2d Cir. Apr. 3, 1996).

## II. *Plaintiff's French Action*

In 1990, Plaintiff and L'Agence Pour La Protection Des Programmes ("L'Agence")[3] filed an action in the Tribunal de Commerce in Bobigny, France (the "Commercial Court")[4] against Defendant and la Societe FASTER, S.A.R.L. ("FASTER"), a French company owned by a Dutch concern, which was distributing computer software containing OSCAR 3.5. (Pl.'s Mem. at 7; Def.'s Mem. at 5.) The gravamen of the French action is that the defendants violated Plaintiff's rights under French copyright law[5] by virtue of Defendant's unauthorized importation, and FASTER's unauthorized distribution, of OSCAR 3.5 in France. (Pl.'s Feb. 15, 1990 Commercial Ct. Compl. at 4–5; Pl.'s Mem. at 14.)

By Ruling entered January 20, 1995, the Commercial Court found that Defendant's OSCAR 3.5 program does not infringe upon Plaintiff's ADAPTER program under French copyright law. (Jan. 20, 1995 Ruling of the Commercial Ct. at 17–22.) On August 25, 1995, Plaintiff appealed the decision of the Commercial Court to the Paris Court of Appeals. (Def.'s Second Supplemental Mem. at 2.) On April 11, 1995, Defendant amended its motion to enjoin Plaintiff from continuing to maintain its appeal of the Commercial Court's decision. (Def.'s Apr. 10, 1995 Mem. at 1–5.) According to the present record, the Paris Court of Appeals has not yet taken any

---

1. The case at bar was reassigned to the undersigned on December 8, 1994.

2. The Court notes that the August 20, 1993 Order by Judge Pratt dismissed Plaintiff's remaining claims. As discussed above, this Order was affirmed by the Second Circuit on April 3, 1996. The parties post-affirmance submissions, however, do not suggest that the Court is divested of jurisdiction. Accordingly, the Court assumes, for purposes of this Order only, that it has the authority to entertain this Motion, notwithstanding the Court's reservation over its present jurisdiction.

3. L'Agence is a "private professional society representing the interests of authors and copyright owners of computer programs." (Def.'s Mem. at 9.)

4. The Commercial Court is a court of limited jurisdiction over civil disputes between parties with commercial status or for acts that are commercial in nature. (Def.'s Mem. at 8.)

5. Plaintiff's computer programs are accorded protection under French copyright law pursuant to the Universal Copyright Convention of Geneva and the Berne Convention for the Protection of Literary and Artistic Works, ratified by the United States in 1955 and 1989 respectively, which, read conjunctively, provide that "a foreign work is entitled to 'national treatment' in all signatory countries, if it originates from a member country where copyright protection is otherwise available." (Def.'s Mem. at 6–7; Pl.'s Feb. 15, 1990 Commercial Ct. Compl. at 3.)

action with respect to that appeal. (Def.'s Second Supplemental Mem. at 2.)

### III. *The Instant Motion*

By the instant motion, Defendant seeks to enjoin Plaintiff from continuing to proceed with its French action. First, Defendant maintains that Plaintiff's French action is barred under the doctrine of res judicata. (Def.'s Mem. at 12–17, 21.) Alternatively, Defendant contends that Plaintiff is collaterally estopped from pursuing its French claims. In response, Plaintiff argues that, as an initial matter, Defendant has failed to satisfy certain threshold requirements for a foreign antisuit injunction. (Pl.'s Mem. at 11.) In addition, Plaintiff asserts that neither res judicata nor collateral estoppel precludes Plaintiff's French action. (*See id.* at 17–25.) For the reasons set forth below, the Court finds that Plaintiff's French action is not barred by the doctrine of res judicata. Moreover, the Court finds that collateral estoppel does not bar Plaintiff's French claims. Finally, the Court finds that Defendant has failed to meet the threshold requirements for a foreign antisuit injunction.

Against that backdrop, the Court will address each of Defendant's arguments in the order presented.

### *DISCUSSION*

### I. *Res Judicata*

■ The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). Res judicata, however, will not apply where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Id.* at 790 (quoting *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir. 1986)) (further citation omitted).

> The general rule [against relitigation of a claim] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's

presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

*Id.* (quoting Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982)). Furthermore, "[w]hile a previous judgment may preclude litigation of claims that arose 'prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *Prime Management Co. v. Steinegger,* 904 F.2d 811, 816 (2d Cir.1990) (quoting *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 328, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955)).

Here, Plaintiff asserts that there existed several formal barriers which precluded it from presenting its entire claim in the United States (the "U.S.") action. The Court agrees.

First, the Court notes that Defendant has failed to establish that a U.S. court could have exercised subject matter jurisdiction over Plaintiff's claims that are the subject of the French suit. The action before the Commercial Court is based upon alleged infringement of Plaintiff's rights under French copyright law arising out of the unauthorized distribution of OSCAR 3.5 in France by FASTER, a French entity, as well as the unauthorized importation into France of OSCAR 3.5 by Defendant. (Pl.'s Mem. at 14.) It is well settled that "copyright laws generally do not have extraterritorial application." *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 73 (2d Cir.1988). Accordingly, "[w]here copyright infringement occurs both inside and outside the United States, the district court has jurisdiction, but only over the U.S. infringement." *GB Mktg. USA Inc. v. Gerolsteiner Brunnen,* 782 F.Supp. 763, 772 (W.D.N.Y.1991).

In the instant case, however, Defendant attempts to rely upon an exception to the general rule, which authorizes a U.S. court to exercise jurisdiction over copyright infringement occurring outside of the U.S. "when the type of infringement permits further reproduction abroad—such as the unauthorized manufacture of copyrighted material in the United States." *Update Art,* 843 F.2d at 73. In other words, for the exception to apply, Defendant must identify an infringing act by Defendant that occurred in the United States which led to further infringement abroad. *See id.; De Bardossy v. Puski,* 763 F.Supp. 1239, 1243 (S.D.N.Y.1991). The present record does not reveal the existence of any infringing act committed by Defendant in the U.S. with respect to OSCAR 3.5, the subject of Plaintiff's French action. To that end, Defendant suggests that if OSCAR 3.5 had been found to infringe upon Plaintiff's copyright, Plaintiff could have recovered damages from Defendant in the U.S. action with respect to the foreign sales of OSCAR 3.5. (Def.'s Reply Mem. at 9–10.) Defendant supports this proposition by reference to Plaintiff's Second Amended Complaint, wherein Plaintiff "sought an accounting 'for any and *all* profits derived by Altai for the distribution of its ... programs ...,' as well as 'actual damages' in an amount to be determined at trial." (*Id.* at 10 (quoting with emphasis Pl.'s Second Am. Compl. at 23.)) Such an allegation, however, is clearly insufficient to make the requisite showing.

Moreover, the Court agrees with Plaintiff that the case law supports the view that a U.S. court may very well have declined to exercise jurisdiction over the issue of Plaintiff's French copyright. Accordingly, the Court cannot conclude that should Plaintiff have chosen to assert issues of French copyright law in the U.S. action, it would have been permitted to do so.

Second, the Court is not convinced that a U.S. court could have exercised personal jurisdiction over FASTER, a French company that distributed Defendant's software in France and which was a defendant in the French action. Defendant's contention that "there is no reason to assume" that FASTER would not have submitted to the jurisdiction of the U.S. courts because it had done so in the past is not persuasive. (Def.'s Reply Mem. at 5.)

Moreover, although Defendant is correct in stating that FASTER need not have been a party in the U.S. action for res judicata to apply, rather only that Faster be in privity with a party in the U.S. action, namely Defendant, the Court is not persuaded that this is in fact the case. (*Id.* at 3); *see also Greenberg v. Board of Governors of Fed. Reserve Sys.,* 968 F.2d 164, 168 (2d Cir.1992). For two parties to be in privity, the interests involved in the prior litigation must have been virtually identical to those in the later litigation such that the precluded party's interests have been represented in the first action. *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 345 (2d Cir.1995). "[T]he key seems to be that [the] interests [of the non-party] have been adequately represented by others who have litigated the matter and lost...." *Id.* (quoting Allan D. Vestal, *Res Judicata/Preclusion* V–125–26 (1969)). Here, this is not the case as the second suit, the French action, is based on different acts of infringement, namely, the alleged infringement of Plaintiff's rights under French copyright law arising out of the unauthorized distribution of OSCAR 3.5 in France by FASTER, as well as the unauthorized importation into France of OSCAR 3.5 by Defendant. Thus, FASTER's interests could not have been adequately represented in the U.S. action as these issues were not raised therein.[6] Moreover, Plaintiff should

---

6. Defendant additionally asserts that it is in privity with FASTER because if Defendant has no liability for copyright infringement as to OSCAR 3.5, then FASTER has no liability. (Def.'s Reply Mem. at 3–5.) This assertion, however, assumes that FASTER's liability arises solely from Defendant's. While it may be true that Defendant has a contractual obligation to indemnify FASTER for any damages resulting from any copyright infringement of Defendant's products, (Def.'s Re-

ply Mem. at 4), only suit against FASTER can prevent FASTER from distributing the infringing product or "effect remedies regarding infringing goods that have already entered the stream of commerce." *See Black & Decker Corp. v. Sanyei Am. Corp.,* 650 F.Supp. 406, 409 (N.D.Ill.1986). Furthermore, the Court notes that Defendant has not established that U.S. copyright law is the same as French copyright law and, accordingly, FASTER's interests under French law could not

not be penalized for failing to assert these claims in the U.S. action as the acts of infringement that form the basis of Plaintiff's French action occurred *after* the commencement of Plaintiff's U.S. action. (Pl.'s Mem. at 20); *see also Prime Management Co. v. Steinegger,* 904 F.2d 811, 816 (2d Cir.1990) (finding res judicata cannot bar second suit based on conduct that "had not occurred when the first suit was brought").

Even assuming *arguendo* the absence of any jurisdictional barriers over Plaintiff's claims, the Court still finds that res judicata would not bar Plaintiff's French suit. Under res judicata, "preclusion is limited to the transaction at issue in the first action. Litigation over other transactions, though involving the same parties and similar facts and legal issues, is not precluded." *Greenberg,* 968 F.2d at 168. In that vein, the fact that both copyright infringement claims at issue may have "involved essentially the same course of wrongful conduct," *i.e.,* unauthorized copying of Plaintiff's computer program, "is not decisive." *Lawlor,* 349 U.S. at 327, 75 S.Ct. at 868.

Moreover, Plaintiff notes a number of differences in the two actions. (Pl.'s Mem. at 21.) First, the acts giving rise to each action are different, as the infringement in Plaintiff's French action arose out of separate acts committed in France. (*Id.*) Next, FASTER, a major party in the French action, was not involved in the U.S. action and, accordingly, Defendant's relationship with FASTER was never explored therein. (*See id.*) Finally, the U.S. action did not concern itself with French copyright law, the essence of the French suit. (*See id.*)

Finding that Plaintiff's claims in the Commercial Court are not barred under the doctrine of res judicata, the Court now turns its attention to the standards for collateral estoppel.

## II. *Collateral Estoppel*

■ The doctrine of collateral estoppel bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior

proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). For collateral estoppel to apply, however, the issues must be identical, and this is not the case when the "legal standards governing their resolution are significantly different." *Id.; see also* 18 Charles A. Wright *et al.,* Federal Practice and Procedure § 4417, at 165 (1981).

In the instant case, Defendant asserts that the legal standards for determining issues of copyright infringement are identical in the United States and France and, thus, collateral estoppel should bar Plaintiff's French claims. (Def.'s Mem. at 18; Def.'s Reply Mem. at 13–17; Def.'s Supplemental Mem. at 1–2; Def.'s Reply to Pl.'s Supplemental Mem. at 3–4.) Plaintiff, however, contends that the two standards are different. (Pl.'s Mem. at 23–25; Pl.'s Supplemental Mem. at 2.) After a review of the current record, the Court is unable to conclude that the two standards are the same. Accordingly, the Court holds that Plaintiff's French action is not barred under the doctrine of collateral estoppel.

## III. *Foreign Antisuit Injunction*

■ It is well settled that a federal court has the power to enjoin foreign suits by persons subject to its jurisdiction. *China Trade and Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 35 (2d Cir.1987); *United States v. Davis,* 767 F.2d 1025, 1038 (2d Cir.1985). International comity, however, "demands that this extraordinary remedy be used only after other means of redressing the injury sought to be avoided have been explored." *Davis,* 767 F.2d at 1038. In addition, because such an order effectively limits the jurisdiction of the foreign tribunal, it should be "used sparingly" and granted "only with care and great restraint." *China Trade,* 837 F.2d at 35–36 (citations omitted).

have been adequately represented by Defendant in the U.S. action.

Concurrent jurisdiction in two courts does not necessarily result in a jurisdictional conflict. *Id.* at 36. "[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other[.]"[7] *Id.* (quoting *Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984)) (further citation omitted). "Since parallel proceedings are ordinarily tolerable, the initiation before a foreign court of a suit concerning the same parties and issues as a suit already pending in a United States court does not, without more, justify enjoining a party from proceeding in the foreign forum." *Id.*

In *China Trade,* the Second Circuit adopted the approach taken by the District Court and found that in determining whether to enjoin foreign litigation, a court will first examine two threshold requirements: (1) whether the parties to both suits are the same; and (2) whether resolution of the case before the enjoining court would be dispositive of the action to be enjoined.[8] *Id.* When these threshold requirements are met, a court should then examine the following five factors:

(1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction;[9] (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*Id.* at 35, 36.

With respect to the first threshold condition, identity of parties, Plaintiff's French

action includes two parties not present in Plaintiff's U.S. action, FASTER and L'Agence. *Cf. American Home Assurance Co. v. Insurance Corp. of Ireland, Ltd.,* 603 F.Supp. 636, 643 (S.D.N.Y.1984) (finding parties same in both actions when all parties to foreign action present in U.S. action). In that vein, the Court has already determined that Defendant and FASTER are not in privity for the purposes of the two proceedings at issue.

As to the second threshold requirement, the Court finds that the U.S. action cannot be deemed dispositive of Plaintiff's French action as the latter action involves issues that were neither raised, nor could have been raised, in the U.S. action.

Based on the foregoing, the Court finds that Defendant has failed to satisfy the threshold requirements for a foreign antisuit injunction. Accordingly, the remaining five factors need not be, and are not, addressed by the Court.

## CONCLUSION

For the reasons indicated above, Defendant's motion to enjoin Plaintiff from continuing to maintain its french copyright action is denied.

SO ORDERED.

---

7. Because the Court has already determined that res judicata does not apply to the instant facts, the Court will proceed in examining whether Defendant has met the standards for a foreign antisuit injunction.

8. The Court has considered and rejected Defendant's arguments that these threshold standards do not apply to the case at bar. *See China Trade,* 837 F.2d at 36 ("In general we agree with the approach taken by Judge Motley. . . ."). *See also American Home Assurance Co. v. Insurance Corp. of Ireland, Ltd.,* 603 F.Supp. 636, 643 (S.D.N.Y. 1984).

9. To the extent Defendant contends that the Court should examine whether the jurisdiction of the U.S. court is threatened by the continuation of the French action, *see* Def.'s Reply Mem. at 18, the Court notes that Defendant has failed to make such a showing. *See China Trade,* 837 F.2d at 36, 37 ("[I]f a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may also be necessary to protect the enjoining court's jurisdiction.").