UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PHOENIX COLOR CORPORATION, a
Delaware corporation,
*Plaintiff-Appellee,*

v.

KRAUSE AMERICA, INCORPORATED,
*Defendant-Appellant.*

No. 00-2515

PHOENIX COLOR CORPORATION, a
Delaware corporation,
*Plaintiff-Appellant,*

v.

KRAUSE AMERICA, INCORPORATED,
*Defendant-Appellee.*

No. 00-2544

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-99-71-S)

Argued: November 2, 2001

Decided: December 27, 2001

Before WILKINSON, Chief Judge, and WILLIAMS and
MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert P. O'Brien, NILES, BARTON & WILMER, Baltimore, Maryland, for Appellant. George Faulkner Ritchie, IV, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Eric A. Frechtel, NILES, BARTON & WILMER, Baltimore, Maryland; John W. Hogan, HOGAN & RINI, P.C., New Haven, Connecticut, for Appellant. James D. Mathias, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Phoenix Color Corporation filed suit against Krause America, Inc., from which it purchased eight technologically advanced printing plate-making machines. Phoenix Color asserted claims for breach of warranty and breach of contract based on alleged defects in the first three machines. The district court awarded Phoenix Color $1,899,257.00 in damages as a result of pre-trial orders and the jury's findings, but refused to grant prejudgment interest. Krause America appeals and Phoenix Color cross-appeals. For the reasons that follow, we affirm the judgment of the district court.

### I.

Phoenix Color Corporation is a manufacturer in the high resolution printing industry. It produces books and book components, including book jackets, paperback covers, and pre-printed case covers. The production process begins in the pre-press department with the creation of images on printing plates. The plates are then mounted onto a printing press to generate repeat impressions of the plated image.

Until recently, such plates were prepared through the use of film. The advent of computer-to-plate ("CTP") technology, however, has rendered film unnecessary in the production of printing plates. The technology uses computer-guided lasers, allowing printers to burn images directly from computer files onto the plates. This reduces press down time and improves image quality over that produced with film.

This diversity action arises out of Phoenix Color's purchase of eight CTP plate-making machines from Krause America, Inc. in October 1997, for a price of approximately $3.5 million. As a result of alleged chronic failures and defects in the first three such machines Krause America installed at Phoenix Color's facilities ("CTP 1, 2, and 3"), as well as Krause America's refusal to take back the machines, Phoenix Color filed suit in the Circuit Court of Maryland for Washington County. It asserted claims for breach of warranty and breach of contract. Krause America removed the case to the United States District Court for the District of Maryland. It also filed counterclaims for breach of contract and anticipatory breach of contract based on Phoenix Color's failure to pay the full price for previously installed CTP machines and its refusal to accept future deliveries on order. After extensive discovery, the parties filed cross-motions for summary judgment.

On January 3, 2000, the district court granted Phoenix Color partial summary judgment. In relevant part, the court first held that Phoenix Color did not make an effective rejection of CTP 1, 2, or 3 under § 2-602 of the Connecticut version of the Uniform Commercial Code ("U.C.C.").[1] Second, the court determined that Phoenix Color failed to provide timely notice necessary to revoke its acceptance of CTP 1, 2, and 3 under § 2-608. Third, the court concluded that defects in CTP 1, 2, and 3 resulted in breach of the implied warranty of merchantability under § 2-314. Fourth, the court held that the parties had entered into an installment contract under § 2-612 for the sale of eight CTP machines. Fifth, the court concluded that the jury would have to decide whether the problems with CTP 1, 2, and 3 so substantially

[1]The contracts provide that the substantive law of Connecticut governs this dispute. Connecticut has adopted the U.C.C., *see* Conn. Gen. Stat. § 42a-1-101 *et seq.*, which controls this case because it involves the sale of goods. For the sake of convenience, we cite to the U.C.C.

impaired the value of the entire contract as to constitute breach of the whole contract, justifying Phoenix Color's cancellation of the remaining orders for five machines. Finally, the court held that Phoenix Color did not violate the U.C.C.'s obligation of good faith and was not conspiring with the substitute supplier it eventually engaged.

In response to Phoenix Color's motion for reconsideration, the district court held that Phoenix Color had properly revoked acceptance of CTP 1, 2, and 3. The court further amended its ruling in response to Krause America's request for further reconsideration, holding that CTP 1 was not part of the installment contract and that the jury would have to decide whether the final two machines ordered by Phoenix Color ("CTP 7 and 8") were part of the installment contract. The court also granted Phoenix Color's motion *in limine* to preclude the introduction of evidence of its contracts with a substitute supplier of CTP equipment.

After a seven-day trial, the jury determined that CTP 7 was part of the installment contract, but that CTP 8 was not. The jury also found that the defective performance of CTP 2 and 3 substantially impaired the value of the entire contract. As a result of its pre-trial orders and the jury's findings, the district court awarded Phoenix Color damages in the amount of $1,899,257.00, but refused to grant Phoenix Color prejudgment interest. The court also denied Phoenix Color's post-trial motion for judgment as a matter of law on the jury's exclusion of CTP 8 from the installment contract.

Krause America appeals various pre-trial orders and the final judgment. Phoenix Color cross-appeals the exclusion of CTP 8 from the installment contract and the denial of prejudgment interest.

## II.

## A.

Krause America first appeals the district court's determination as a matter of law that the CTP contracts signed by Phoenix Color and Krause America in October 1997 constituted an installment contract under § 2-612.[2] Krause America observes that the parties executed a

---

[2]We decline to address Phoenix Color's alternative argument that defects in CTP 1, 2, and 3 constituted an anticipatory repudiation of the

total of ten separate contracts for three different models of the Krause America CTP machine to be delivered to plants in six different states, and only five of these contracts were executed in October 1997. Krause America further submits that each contract consisted of an independent set of documents and was separately negotiated by the parties, and that the district court ignored the "singleness of the document and the negotiation" requirement of Comment 3 to § 2-612. Finally, Krause America asserts that the court incorrectly resorted to modification of contract principles in holding both that CTP 1 was not part of the installment contract, and that the jury would have to determine whether CTP 7 and 8 were part of the installment contract.[3]

   We disagree. An installment contract "is one which requires or authorizes the delivery of goods in separate lots to be separately accepted." § 2-612(1). The court below reasoned that

> although there were eight separate specification sheets and quote forms, all of them grew out of a common set of negotiations, and all were executed in October, 1997, as a package deal. Under these circumstances, it is clear to the Court that common and commercial sense require this contract to be considered as an installment contract under Section 2-612. This is, in fact, precisely the sort of situation to which

contract under § 2-610. This contention was made below and summarily rejected by the district court, but on appeal it was merely raised at oral argument without having been briefed. We therefore think it the better course not to entertain it.

   [3]Krause America also claims that there is an open question as to whether CTP 5 and 6 are part of the installment contract. This is because the district court did not explicitly state that the contracts for those two machines were part of the installment contract. We do not agree. Krause America is correct that the district court did not mention CTP 5 and 6 by name in its order of June 14, 2000. But we agree with Phoenix Color that the court clearly intended to include all LS 110C model machines ordered by Phoenix Color in the installment contract. Because CTP 5 and 6 are machines of that model, we find no merit in Krause America's contention. Indeed, Krause America makes this argument for the first time on appeal. It did not question the court's ruling after June 14, 2000, and it went to trial without raising this objection.

Section 2-612 was intended to apply, *viz.*, where a seller makes a series of deliveries over a period of time and the cumulation of non-conformities so impairs the value of the continuing relationship as to justify the buyer's excuse from continuing to be required to buy under the contract.

The district court was correct in so holding. Comment 1 to § 2-612 states that "[t]he definition of an installment contract" includes "installment deliveries tacitly authorized by the circumstances or by the option of either party." After reviewing the record, we agree that an installment contract existed under the "circumstances" of this case. The first purchase order signed by the parties expressly stated that Phoenix Color was agreeing "to allow KRAUSE AMERICA to supply all CTP systems to all [of its] facilities predicated upon [the] success of [the] 1st installation." The record further reveals that: (1) the parties negotiated with the common understanding that Krause America would be Phoenix Color's sole supplier; (2) Krause America extended price discounts because Phoenix Color was purchasing all of its CTP machines from Krause America; (3) the delivery schedule was set out in advance; (4) the model and design specifications of the machines were similar; (5) those specifications arose from the parties' recognition of Phoenix Color's particular needs; and (6) when Phoenix Color's needs changed, the parties responded by modifying their agreement. When something looks like an installment contract and walks like an installment contract, we find ourselves unable to conclude that it is not.

Krause America's arguments to the contrary are unpersuasive. We do not read Comment 3 to § 2-612 as imposing a strict "singleness of the document and the negotiation" requirement as a necessary condition for the existence of an installment contract. This is because Comment 3 explicitly addresses itself to the question of whether clauses in contracts such as "'each delivery is a separate contract'" should be given "their legalistically literal effect," and concludes that they should not. But because such a clause is not at issue here, nothing in Comment 3 is dispositive of the relevant inquiry in this case.

As the district court correctly observed, the separate paperwork and purchase documents completed by the parties for the various machines did not preclude the formation of an installment contract

because § 2-612's definition of "contract" is quite expansive. It is defined to mean "the total legal obligation which results from the parties' agreement as affected by this title and any other applicable rules of law." § 1-201(11). The parties' "agreement" is in turn defined to mean "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." § 1-201(3). Nowhere in these definitions is there a requirement of a single document or negotiation. And other courts agree that § 2-612 does not impose such a severe restriction. *See, e.g.*, *Cassidy Podell Lynch, Inc. v. Snyder-General Corp.*, 944 F.2d 1131, 1146-47 (3d Cir. 1991) (holding that twenty-three purchase orders "made up a single installment contract").

In addition, even limiting our focus to Comment 3, it states that not only the "singleness of the document and the negotiation," but also the "sense of the situation" should "prevail over any uncommercial and legalistic interpretation." The "sense of the situation" in this case causes us to conclude that the parties created and later modified an installment contract.

Krause America fails to cite any legal authority for the proposition that an installment contract cannot be modified under § 2-209. Other courts have held that it can be modified. *See, e.g.*, *Midwest Mobile Diagnostic Imaging, L.L.C. v. Dynamics Corp. of Am.*, 965 F. Supp. 1003, 1012 (W.D. Mich. 1997); *Traynor v. Walters*, 342 F. Supp. 455, 457, 461 (M.D. Pa. 1972). Because we see no reason in logic or law why an installment contract cannot be modified, we reject Krause America's contention.[4]

---

[4]In addition to its substantive objections to the district court's decision on the installment contract issue, Krause America argues that the court improperly raised and decided the question *sua sponte*. Krause America submits that it was procedurally prejudiced by the summary judgment ruling because it was not provided with notice and an opportunity to present an opposition. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000). But Krause America was given the opportunity to voice its objections and present evidence concerning the ruling in both its motion for reconsideration and its request for further reconsideration, as a result of which the district court modified its ruling in partial agreement with Krause America's position.

B.

Krause America next asserts that the district court erred in ruling as a matter of law that Phoenix Color made an effective revocation of acceptance of CTP 1, 2, and 3 under § 2-608. Krause America invokes *Solar Kinetics Corp. v. Joseph T. Ryerson & Son, Inc.*, 488 F. Supp. 1237 (D. Conn. 1980), for the proposition that in order to be effective, a notice of revocation must identify the particular nonconformities in the goods that substantially impair their value to the buyer. Krause America submits that Phoenix Color's failure to provide such notice is fatal to its claim.

We do not agree. The district court correctly found that Phoenix Color's August 26, 1998 letter to the president of Krause America constituted an effective revocation of acceptance under § 2-608. The letter stated that "we would like you to remove all machines currently on our premises." These words were understood by Krause America to be a notice of revocation of acceptance. The very next day, Krause America's president sent Phoenix Color's chairman a response stating that "[a]fter consulting at length with KRAUSE's counsel, I wish to inform you that PHOENIX has asserted no legal basis for revoking it's [sic] acceptance of KRAUSE machines already shipped to PHOENIX . . . ."

Krause America is correct that Phoenix Color did not identify in its August 26 letter the specific nonconformities that substantially impaired the value of the machines. But under the circumstances of this case, we do not think that the *Solar Kinetics* decision required Phoenix Color to do that in order to effect a valid revocation of acceptance under Connecticut law. As discussed below, the record contains numerous statements from Krause America's own service personnel documenting the existence of defects. Thus, Krause America had actual notice of exactly what was wrong with the machines it sold to Phoenix Color.

In *Solar Kinetics*, by contrast, the seller did not have anywhere near the notice that Krause America had. The court in that case found that the first time some form of notice was given, the buyer merely complained that the aluminum at issue was "'not meeting specifications,'" voiced only general concerns about "'reflectivity,'" and "en-

couraged the defendant to make some tests of its own." The buyer did not "purport to revoke his acceptance or offer to return the aluminum." 488 F. Supp. at 1247. The court further found that the only other time notice was allegedly given, the buyer relied upon an alleged nonconformity that the jury subsequently found was not a nonconformity. *Id.* at 1249. In short, *Solar Kinetics* was a case in which "a buyer in litigation [was not allowed] to justify his earlier attempted revocation by reference to defects in the goods which he only discovered after the supposed revocation." *Id.* at 1246; *see also id.* at 1249. Thus, that decision is not controlling here.

## C.

Krause America also claims that the court erred in holding as a matter of law that Phoenix Color made a justifiable revocation of acceptance of CTP 1, 2, and 3 under § 2-608, entitling it to a return of the purchase price paid for those machines under § 2-711. Krause America argues that the extensive productivity of CTP 1, 2, and 3 contradicts the court's ruling that nonconformities substantially impaired their value to Phoenix Color.

Based on the record before us, we disagree. In relevant part, § 2-608(1) provides that "[t]he buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him." Applying this section, the district court did not mince words in announcing its factual findings:

> The record is replete with overwhelming evidence that the delivered presses suffered from design defects that caused extraordinary amounts of down time, that required almost constant attention from both plaintiff's and defendants' personnel, and that rendered them unmerchantable. Indeed, the record contains numerous statements from defendants' personnel as to design and/or manufacturing defects in the presses. Defendants' evidence adduced in opposition is entirely too weak for any reasonable fact-finder to find in its favor.

The court reiterated that "[t]here is no question, in light of Krause documents admitting that the machines experienced continuing diffi-

culties due at least in part to design and manufacturing defects, as amply chronicled in the record, that the machines did not conform to the contract."

We have reviewed the same record, and we conclude that the evidence of substantial impairment found by the district court is in fact there.[5] As one example among many, Krause America's own head service technician confirmed the existence of "a combination of both design, and manufacturing faults, which while not major, routinely require the attention of a technician." Numerous service reports, telephone calls, and on-site repair efforts document the multitude of mechanical problems with the machines. The down time that resulted ultimately required rerouting of Phoenix Color's pre-press work from CTP to traditional film-based plate-making. We therefore have no doubt that the district court was correct in holding as a matter of law that nonconformities substantially impaired the value of CTP 1, 2, and 3 to Phoenix Color.[6]

---

[5]Our review of the record also leaves us in agreement with the court's conclusion that Phoenix Color notified Krause America of its revocation "within a reasonable time after discovery of the defects that were latent and after Krause's failure to cure defects that were patent." We therefore do not perceive any problem with the timeliness of Phoenix Color's revocation under § 2-608(2).

[6]Krause America's final argument is that the district court made an evidentiary error when it disregarded documentary evidence that Phoenix Color entered into contracts with an alternative supplier of CTP equipment in August 1998 before it wrote to Krause America on August 26, 1998. Krause America reasons that these contracts are directly relevant to the issue of substantial impairment because they suggest that the reason Phoenix Color canceled its contracts with Krause America was based on something other than the performance of the machines. But the court found insufficient evidence upon which any reasonable fact-finder could conclude that Phoenix Color acted in bad faith, or that it was conspiring with its substitute supplier. And nothing in the record persuades us otherwise. In addition, the evidence of motivation Krause America sought to introduce is irrelevant to the dispositive inquiries under §§ 2-608 and 2-612 — namely, whether nonconformities with respect to CTP 1, 2, and 3 substantially impaired the value of those machines and the contract as a whole. Thus, the court did not abuse its discretion in excluding evidence of Phoenix Color's contracts with an alternative supplier. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

D.

In its cross-appeal, Phoenix Color argues that substantial evidence does not exist to support the jury's exclusion of CTP 8 from the installment contract between it and Krause America. Phoenix Color submits that the trial testimony was undisputed that the parties had agreed to have Krause America become the sole provider of CTP equipment to Phoenix Color pending a successful installation of CTP 1, and that the parties later modified the installment contract to include CTP 8 in response to Phoenix Color's reexamination of its needs. Phoenix Color contends that Krause America did not present any credible evidence on which the jury could have excluded CTP 8 from the installment contract.

We disagree. As the court below found, CTP 8 was a different, larger model than CTP 1-6. In addition, the court accepted Krause America's contention that CTP 8 would be used for somewhat different purposes than CTP 1-6. Finally, Phoenix Color ordered CTP 8 in March 1998, some five months after the date the court found to be the time the installment contract was formed. In view of this evidence, we are unable to conclude that the court erred in refusing to hold as a matter of law that CTP 8 was part of the installment contract.[7]

E.

The final question before us is Phoenix Color's claim that the district court abused its discretion in failing to award prejudgment interest on the liquidated amounts to which Phoenix Color is entitled. Phoenix Color argues that it was unjustly denied use of the money it paid to Krause America for defective machinery from December 16, 1998 through October 25, 2000, the date of final judgment. Phoenix Color submits that the district court misconstrued Connecticut law in

---

[7]It is true that the jury found that CTP 7, the same model CTP machine as CTP 8, was part of the installment contract. But as the district court noted, "at most, the Plaintiff has pointed to an inconsistent special verdict." And as the qualification "at most" indicates, it is not at all clear that the verdict was inconsistent. For example, the parties entered into the contract for CTP 7 approximately two months before Phoenix Color ordered CTP 8.

holding that a legitimate dispute between the parties allowed it to deny the motion for interest.

We are not persuaded. Conn. Gen. Stat. § 37-3a provides that pre-judgment interest at a rate of ten percent a year "may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." The statute does not state that interest *shall* be recovered and allowed. The awarding of prejudgment interest therefore lies within the discretion of the trial court. *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 817 (2d Cir. 1990); *Northrop v. Allstate Ins. Co.*, 720 A.2d 879, 884-85 (Conn. 1998).

The district court denied Phoenix Color prejudgment interest because "there was a live viable dispute here. . . . I don't think Krause was unjustly enriched by having this money, which after all was . . . voluntarily paid against future deliveries." The court was also concerned not to "make it more the rule than the exception to award prejudgment interest in cases where there was a contract dispute and some money had been paid on account." In view of these plainly legitimate reasons, as well as "the trial court's broad discretion in determining whether the money due the plaintiff was wrongfully detained," *Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.*, 687 A.2d 506, 523 (Conn. 1997), we are unable to say that the district court abused its discretion in denying Phoenix Color prejudgment interest.

### III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.