**BAKER HUGHES, INC. and
Envirotech Controls, Inc.,
Petitioners,**

v.

**KECO R. & D., INC., Respondent.**

No. 98–0520.

Supreme Court of Texas.

Argued Sept. 15, 1999.

Decided Oct. 7, 1999.

Rehearing Overruled Jan. 6, 2000.

Claudia Wilson Frost, Jacalyn Ann Hollabaugh, David Hricik, Steve Rosenblatt, Houston, for petitioners.

D. Arlon Groves, David Alton Bryant, Jr., Houston, for respondent.

Justice HECHT delivered the opinion of the Court.

The principal issue we address here is whether a claim for misappropriation of trade secrets that was barred by limitations was revived by the later enactment of section 16.010 of the Texas Civil Practice and Remedies Code, which extended the limitations period from two years to three years and adopted the discovery rule for determining accrual. We hold that for section 16.010 to have such effect would violate the prohibition against retroactive laws in article I, section 16 of the Texas Constitution. Consequently, we reverse in part and affirm in part the judgment of the court of appeals[1] and remand the case to the district court for further proceedings.

## I

Keco R. & D., Inc., a small, closely-held corporation, manufactured a device that recalibrates industrial pollution gas analyzer systems when the accuracy of their readings drifts. Keco began selling the device, which Keco called a "Texas Ranger," to Tracor Atlas, Inc. in 1987 for incorporation into industrial gas analyzer systems that Tracor manufactured. Baker Hughes, Inc. later bought Tracor and merged it into Envirotech Controls, Inc., a wholly owned Baker Hughes subsidiary. For convenience, we refer to Tracor, Envirotech, and Baker Hughes collectively as "Baker Hughes."

Keco also provided Baker Hughes information concerning the "Texas Ranger" that Keco considered proprietary. To protect that information, Keco had Baker Hughes sign a "Confidential Disclosure Agreement" in December 1989. Reciting that Keco had "developed substantial confidential information data and products," the Agreement provided that as long as Keco continued to sell to Baker Hughes and for three years thereafter, Baker Hughes would not (1) disclose confidential information, data, or processes supplied by Keco, (2) manufacture, in competition with Keco, components of original Keco design, or (3) use Keco's confidential information for the development of competitive component equipment. The Agreement gave Baker Hughes ownership of any test data it developed.

On April 26, 1991, Keco's president and principal, Charles Kimbell, wrote to a Baker Hughes employee and asserted that a paper the employee had presented at an industry trade show some six months earlier violated the Confidential Disclosure Agreement. The paper purported to discuss Baker Hughes test data concerning calibration of gas analyzer systems, but Kimbell called it "plagiarism" of Keco information. In response, Baker Hughes terminated its relationship with Keco and sought a different supplier for a calibration device to incorporate in its analyzer systems. Also in April 1991, Baker Hughes furnished a Keco competitor, Kin–Tek, with a disassembled "Texas Ranger," the test data it had presented at the trade show, and Keco's promotional literature. Within a month or so, Kin–Tek had devel-

**1.** 982 S.W.2d 25.

oped a unit for Baker Hughes's use in place of the "Texas Ranger."

On October 27, 1993, Keco sued Baker Hughes for misappropriation of trade secrets and breach of the Confidential Disclosure Agreement. Baker Hughes moved for summary judgment on the trade secrets claim on the ground that it was barred by the applicable two-year statute of limitations, section 16.003 of the Texas Civil Practice and Remedies Code. About a month later, Baker Hughes filed a second motion for summary judgment on the contract claim on the ground that the evidence established as a matter of law that no breach had occurred. The district court granted the first motion but denied the second one at the same time. Several months later, Baker Hughes then filed a third motion for summary judgment on the ground that it did not breach the Confidential Disclosure Agreement because none of the information it obtained from Keco was a trade secret. The trial court granted this motion. In accordance with its rulings, the court rendered a final judgment that Keco take nothing.

The court of appeals reversed and remanded both of Keco's claims.[2] Concerning limitations, the court held that section 16.010, enacted almost a year after final judgment was rendered, applied to Keco's trade secrets claim.[3] Section 16.010(a) states:

A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.[4]

The statute extends the applicable limitations period from two years, which it had been under section 16.003 and adopts the discovery rule for determining the accrual of a claim, something we declined to do in *Computer Associates International, Inc. v. Altai, Inc.*[5] Section 3 of the Act adopting section 16.010 adds:

(a) This Act applies to all actions:

(1) commenced on or after the effective date of this Act [May 1, 1997]; or

(2) pending on that effective date and in which the trial, or any new trial or retrial following motion, appeal, or otherwise, begins on or after that effective date.

(b) In an action commenced before the effective date of this Act, a trial, new trial, or retrial that is in progress on the effective date is governed by the law applicable to the trial, new trial, or retrial immediately before the effective date, and that law is continued in effect for that purpose.[6]

The court of appeals concluded simply that because Keco's action was pending on May 1, 1997, section 16.010 applied, and that the parties' dispute over when Keco knew or should have known of the misappropriation of its trade secrets precluded summary judgment.[7]

Concerning Keco's contract claim, the court held that Baker Hughes had not established that information it obtained from Keco was not a trade secret, so that its third motion for summary judgment should not have been granted.[8] The court refused to consider whether Baker Hughes's second motion for summary judgment should have been granted.[9]

2. *Id.*

3. *Id.* at 28.

4. Tex. Civ. Prac. & Rem.Code § 16.010.

5. 918 S.W.2d 453, 458 (Tex.1996).

6. Act of Apr. 17, 1997, 75th Leg., R.S., ch. 26, § 3, 1997 Tex. Gen. Laws 68.

7. 982 S.W.2d at 28.

8. *Id.* at 28–29.

9. *Id.* at 29.

We granted Baker Hughes's petition for review.[10] Baker Hughes argues that the court of appeals' application of section 16.010 violates the prohibition against retroactive laws in article I, section 16 of the Texas Constitution, and that Keco's trade secrets claim is barred by limitations. Baker Hughes also argues that it was entitled to summary judgment on Keco's contract claim. We address each argument in turn.

## II

■ This case was pending on May 1, 1997, the effective date of section 16.010, and any trial following this appeal will begin after that date. Thus, section 3(a)(2) of the Act adopting section 16.010 makes the statute applicable to this case.

■ Statutes of limitations are procedural.[11]

> The rule is well settled that procedural statutes may apply to suits pending at the time they became effective, but even a procedural statute cannot be given application to a suit pending at the time it becomes effective if to do so would destroy or impair rights which had become vested before the act became effective. In this connection it is the settled law that, after a cause has become barred by the statute of limitation, the defendant has a vested right to rely on such statute as a defense.[12]

To permit barred claims to be revived years later would undermine society's interest in repose, which is one of the principal justifications for statutes of limitations.[13] Thus, we have written that a statute extending the limitations period of a claim already barred by limitations violates the Texas Constitution's prohibition against retroactive laws, which is article I, section 16.[14]

■ Keco argues that Baker Hughes had no vested right to its limitations defense because at the time suit was filed, it was an "open question" whether the discovery rule applied to claims for misappropriation of trade secrets. It is true that no reported decision of a Texas court addressed the applicability of the discovery rule to such claims until our opinion in *Computer Associates International, Inc. v. Altai, Inc.*,[15] which issued while the present case was pending in the district court. But whether a party has a vested right to a limitations defense does not depend on whether the law was settled when suit was filed. Our decision in *Computer Associates* did not create new law for trade secrets claims; rather, it recognized what the law was. As a rule, court decisions apply retroactively.[16] Exceptions are determined mostly by three factors:

> (1) whether the decision establishes a new principle of law by either overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether prospective or retroactive application of the particular rule will further or retard its operation through an examination of the history, purpose, and effect of the rule; and (3) whether retroactive appli-

10. 42 Tex. Sup.Ct. J. 420 (Mar. 25, 1999).

11. *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 793 (Tex.1974).

12. *Wilson v. Work*, 122 Tex. 545, 62 S.W.2d 490, 490 (1933) (per curiam) (citing *Cathey v. Weaver*, 111 Tex. 515, 242 S.W. 447, 453 (1922)); *see Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 255 (1887).

13. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 545 (Tex.1986).

14. *Mellinger*, 3 S.W. at 251.

15. 918 S.W.2d at 458; *see Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 22 F.3d 32, 33 (2d Cir.1994).

16. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 719(Tex.1996); *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex.1992); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 515 (Tex. 1992); *Sanchez v. Schindler*, 651 S.W.2d 249, 254 (Tex.1983).

cation of the rule could produce substantial inequitable results.[17]

We did not indicate in *Computer Associates* that our decision there should be prospective only, and these factors clearly do not weigh in favor of a prospective application. Although the issue was one of first impression, denying applicability of the discovery rule was in keeping with this Court's precedents and with the purpose of limitations.

Keco's claims against Baker Hughes accrued, at the latest, in April 1991, when Baker Hughes provided Kin–Tek with information to manufacture a calibrator to compete with Keco's "Texas Ranger." Within a few weeks Kin–Tek began manufacturing the new device. Keco's trade secrets claim, filed well over two years later, was therefore barred by the then-applicable two-year statute of limitations. Baker Hughes's right to a limitations defense vested before section 16.010 was enacted. Section 16.010's divestiture of that right violates article I, section 16 of the Texas Constitution.

Baker Hughes was thus entitled to summary judgment on Keco's trade secrets claim.

### III

■ Baker Hughes argues that it is entitled to summary judgment on Keco's contract claim because it established, in its third motion, that no information it received from Keco was a trade secret and, in its second motion, that no breach of the Confidential Disclosure Agreement occurred.

We agree with the court of appeals that factual disputes over whether the information Baker Hughes obtained from Keco can be classified as trade secrets preclude summary judgment. Baker Hughes relied on the affidavit of an expert on pollution analyzers who stated that the information in question was widely known in the industry and therefore could not qualify for trade secret protection. But Keco's president, also an expert in engineering and manufacturing Keco's products, made statements in his affidavit directly counter to Baker Hughes's expert. Because of this conflict in the evidence, Baker Hughes's third motion for summary judgment should have been denied.

■ The court of appeals refused to consider whether Baker Hughes's second motion for summary judgment should have been granted, citing the general rule that a denial of summary judgment is interlocutory and not appealable.[18] But as we recognized in *Cincinnati Life Insurance Co. v. Cates,*[19] the rule does not apply when a movant seeks summary judgment on multiple grounds and the trial court grants the motion on one or more grounds but denies it, or fails to rule, on one or more other grounds presented in the motion and urged on appeal.[20] In *Cates* we held that the appellate court must review all of the summary judgment grounds on which the trial court actually ruled, whether granted or denied, and which are dispositive of the appeal,[21] and may consider any grounds on which the trial court did not rule.[22] The court of appeals refused to follow *Cates* because the second motion was denied months before the third motion was granted.[23] The court of appeals offered no rationale for its position, and we know of none. The rule in *Cates* does not depend

17. *Gandy,* 925 S.W.2d at 719–720 (quoting *Elbaor,* 845 S.W.2d at 250). *See also Carrollton–Farmers Branch,* 826 S.W.2d at 518 (quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)).

18. *See Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980).

19. 927 S.W.2d 623 (Tex.1996).

20. *Id.* at 625, 626.

21. *Id.* at 624.

22. *Id.*

23. 982 S.W.2d at 29.

on the number of motions filed, when they were presented to the trial court, or when the trial court ruled. The court of appeals should have considered whether the district court properly denied Baker Hughes's second motion for summary judgment.

Rather than remand the case to the court of appeals, however, we have examined the grounds of Baker Hughes's second motion ourselves.[24] Baker Hughes argues that the essence of Keco's breach of contract claim is that Baker Hughes provided Keco's confidential information to Kin–Tek, who used it to design and manufacture a product to compete with the "Texas Ranger." Baker Hughes concedes that it obtained information from Keco, and we have concluded that there is evidence to support Keco's claims that that information included trade secrets. Baker Hughes contends that the only information it furnished Kin–Tek, and that Kin–Tek used, was not confidential, but the Baker Hughes employee who provided the information to Kin–Tek testified that he could not recall exactly what was furnished. Keco's president averred that Kin–Tek could not possibly have designed and built, in a few weeks, a device that Keco had taken four years and spent millions of dollars to develop, unless Kin–Tek had used confidential information that Keco had provided Baker Hughes. As we have noted, Keco's president was an expert involved in the design and manufacture of the "Texas Ranger". On this record, we conclude that questions of fact precluded summary judgment on the grounds raised in Baker Hughes's second motion.

Thus, Baker Hughes was not entitled to summary judgment on Keco's contract claim.

* * * * *

Accordingly, the court of appeals' judgment is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings.

---

24. *See Coulson & CAE, Inc. v. Lake L.B.J. Mun. Util. Dist.,* 734 S.W.2d 649, 652 (Tex. 1987); *Roark v. Allen,* 633 S.W.2d 804, 811 (Tex.1982).