Opinion issued April 28, 2005
     









In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-00077-CV
____________

PEARY PERRY, Appellant

V.

THE CITY OF HOUSTON, Appellee




On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 95-48089-A




MEMORANDUM OPINION
          This is an appeal of the trial court’s rendition of partial summary judgment for
appellee, the City of Houston, against appellant, Peary Perry, on his claims of libel
and slander, based on the City’s plea to the jurisdiction, and of the trial court’s
rendition of five no-evidence summary judgments in favor of the City on Perry’s
claims for (1) violation of First Amendment rights by retaliation; (2) tortious
interference with prospective contractual relationships; (3) tortious interference with
an employment relationship; (4) due process violations of a liberty interest in his
good name; and (5) intentional infliction of emotional distress. In three issues, Perry
contends that the City did not establish as a matter of law that it was protected by
governmental immunity, and that he presented more than a scintilla of probative
evidence to support each of the claims the trial court rejected. We affirm.
Factual & Procedural Background


On May 5, 1993, the City entered into a contract with Municipal Collections,
Inc. (MCI) to collect delinquent traffic tickets. During the contract’s term, Perry was
MCI’s president and chief executive officer, as well as its majority shareholder. 
Pursuant to the contract, MCI was to be paid a contingency fee of 28% of the
revenues it collected; the contingency fee was to be paid solely from monies collected
by MCI. The contract stated that the director of the Municipal Courts Administration
Department (MCAD) “shall have the exclusive right to approve the amount and
payment of any monies due to [MCI] under this Contract” and that payment would
be made to MCI when MCAD’s director receives and approves an MCI invoice. 
With regard to payment, the contract also stated, 
The City [of Houston] shall review each invoice and, within (15)
working days after its receipt, either approve it and deliver it to the
Controller’s office for payment, or return it to [MCI] with a statement
of the reasons for its rejection or non-approval. The City shall make
payment within 30 days of approval of [MCI’s] invoice.

From June 1993 through October 1994, MCAD’s director, Larry Miller, approved,
and the Controller’s Office paid, MCI’s invoices. Over a two-year period, MCI
received $3,000,000 from the city for its services.
          To comply with the city’s affirmative action policy, MCI subcontracted with
Bayou City Enterprises (BCE), a minority-owned business. The subcontract provided
that BCE will “manage in close coordination with MCI the systemic noticing of all
alleged Violators provided by the CITY and MCI.” In return for its services, BCE
was to receive 19% of MCI’s 28% contingency fee; however, the subcontract also
provided that BCE would pay MCI a monthly fee of $11,500 toward MCI’s
“operating expenses.” 
          George Greanias served as City of Houston Controller during the contract’s
term. As controller, Greanias was required to audit payment requests .


 One type of
audit performed by Greanias’s office was the “contract compliance audit” to
determine whether the city was assuring compliance with the terms and conditions
of contracts to which it was a party. In November 1994, the Controller’s Office
began a compliance audit of the MCI contract. 
          The audit covered the contract period of May 5, 1993, through March 31, 1995.
Its stated purpose was to determine (1) whether MCI delivered the collection services
it was contracted to provide, and (2) whether fees were paid to MCI according to the
contract terms. Early in the auditing process, the Controller’s Office began an
investigation into the services provided by BCE; however, BCE refused to cooperate
with the investigation. With regard to this investigation, the audit stated, “The
Controller’s Office published a report [in January 1995] concluding that BCE had not
provided sufficient, competent and relevant evidence necessary to demonstrate that
BCE was providing a commercially useful function to the City.” In December 1994,
the Controller’s Office began withholding the portion of payment to BCE (i.e., the
19% of the 28% contingency payment) from payments made to MCI. The
Controller’s Office continued its audit of the MCI contract in March 1995. The audit
was published in July 1995; the auditors concluded as follows:
[MCAD] management cannot provide reasonable assurance that the
terms of the [MCI] contract have been followed. Major contract terms
and provisions have not been complied with. Most of the contract
deviations benefitted the contractor and have resulted in higher cost or
less service to the City. We estimate that the cost to the City resulting
from not adhering to the contract terms has been $1,044,000.
          Some of the more significant audit findings were summarized as follows:
1.The Contract has not been properly administered. Major contract
deviations have been permitted without approval from City
Council. Most of the findings noted below are the result of
deviations from contract terms and we estimate their cost to the
City to be in excess of $1,044,000.
 
2.MCI did not process mail payments as required by the contract. 
The City incurred additional costs of approximately $300,000 in
processing the mail payments for MCI. 
 
3.MCI has withheld $207,000 from the 19% of gross revenue that
the contract provides should have been paid to [BCE].
 
4.The City paid approximately $95,000 in fees to MCI for tickets
on which bonds were posted by the alleged violators after tickets
were assigned to MCI. Under the terms of the contract, MCI is
not entitled to a fee on these tickets.
 
5.The date first notices are sent was not documented in MCI’s
computer database. Incorrect first notice dates were used by
MCAD to determine MCI’s entitlement to a fee, thus resulting in
an overpayment to MCI of approximately $102,000.
 
6.The City paid MCI approximately $118,000 on tickets that the
assignment term exceeded the 210-day limit imposed by the
contract.
 
7.[MCI] did not provide the performance and payment bonds
required by the contract. We estimate that MCI was able to avoid
$112,000 of operating costs by not having to purchase these
bonds.
8.Fees of approximately $110,000 were paid to MCI on tickets that,
under the contract were not eligible for assignment because they
were not at least 30 days delinquent. 
          The published audit also incorporated MCAD’s and the Houston City
Attorney’s responses to the audit’s findings. Generally, both MCAD and the city
attorney disagreed with most of the audit’s findings. 
          Perry’s name is not mentioned in either the published audit or in the transmittal
letter from Greanias to then-City-of-Houston-Mayor Bob Lanier, which forwarded
the audit and summarized some of the audit’s findings and conclusions. Issues
relating to how or why the city selected MCI as the successful contractor were also
not discussed in the audit. 
          Following the publication of the audit, Greanias withheld payment of $315,000
of the amount billed by MCI. Mayor Lanier terminated the MCI contract in August
1995. In a press release, Mayor Lanier stated as follows:
MCI has been rendered incapable of performing under its contract as a
consequence of payments actually withheld by the Controller, future
payments that he says he will withhold, and other payments that he says
he may withhold. . . . I want to limit the City’s potential liability as
much as I can by an early termination of the contract. With the August
withholding, the total amount withheld [from MCI] should approximate
$375,000. I am led to believe that the issue of who owns what part of
this money will be resolved by litigation. 
          Following the termination of the MCI contract, Perry and MCI filed suit against
the City and Greanias in his individual and official capacities. In a motion entitled
“The City of Houston’s Motion for Partial Summary Judgment Regarding
Plaintiff’s Libel/slander Claim and All Tort Claims and Plea to the
Jurisdiction,” the City moved for partial summary judgment on all of Perry’s tort
claims on the basis that it was shielded as a matter of law by governmental immunity. 
The trial court’s order, however, granted the partial summary judgment motion only
as to the libel/slander claim and did not address Perry’s remaining tort claims.
          The City also filed a no-evidence motion for summary judgment on Perry’s
claims for (1) violation of First Amendment rights by retaliation, (2) tortious
interference with prospective contractual relationships, (3) tortious interference with
an employment relationship, (4) due process violations of a liberty interest, and (5)
intentional infliction of emotional distress. The trial court granted the City’s no-
evidence motions for summary judgment on these five claims. 
          After rendering judgment for the City on all causes of action, the trial court
severed Perry’s claims against the City into a separate suit, and this appeal ensued. 
On December 27, 2002, this Court issued its opinion on rehearing in Perry’s suit
against Greanias. That earlier opinion governs our disposition of this appeal.
 
Tort Claims
          In his first issue, Perry contends that the City did not prove it was entitled to
governmental immunity as a matter of law. After Perry filed his brief, this Court
issued its opinion in Perry v. Greanias, 95 S.W.3d 683 (Tex. App.—Houston [1st
Dist.] 2002, pet. denied) (op. on reh’g). In Greanias, this Court concluded (1)
Greanias’s conduct related to the audit of the MCI contract was a governmental
function; (2) Greanias’s conduct relating to the audit, on which Perry based his
complaints, was discretionary; (3) Greanias showed that he acted in good faith in
conducting the audit and acting on its findings; and (4) Greanias acted within the
scope of his authority when he conducted the MCI audit and acted on its findings. 
Id. at 693-99. Based on these conclusions, this Court held that Greanias was immune
from liability in connection with Perry’s claims for violations of his due process and
free speech rights under the Texas Constitution, and was immune from liability in
connection with Perry’s claims for slander, defamation, and intentional infliction of
emotional distress, as they were premised on Greanias’s actions and statements
relating to the audit and its findings. Id. at 699.
          Immunity from liability prohibits adverse judgments against the State even if
the State consents to suit. Tex. Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999). This type of immunity is an affirmative defense, which must be pleaded to
avoid waiver. Id. The trial court’s jurisdiction is unaffected by immunity from
liability, and the appropriate procedural mechanism to assert immunity from liability
is in a motion for summary judgment. Id. The record shows that the City raised this
affirmative defense in its motion for partial summary judgment. A defendant is
entitled to summary judgment when it conclusively establishes all elements of an
affirmative defense. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).
          Except as its immunity has been clearly and unambiguously waived by the
legislature, a political subdivision of the State of Texas has immunity from liability
in the performance of its governmental functions. Dallas County Mental Health &
Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998). Although
immunity is waived to some degree in the Texas Tort Claims Act, the waiver of
immunity under the Act does not apply to claims for intentional torts. See Tex. Civ.
Prac. & Rem. Code Ann. § 101.057(2) (Vernon 1997). Both libel and slander are
common-law intentional torts. See Tex. Dep’t of Health v. Rocha, 102 S.W.3d 348,
353 (Tex. App.—Corpus Christi 2003, no pet.). As a matter of law, therefore, the
City is immune from liability for Perry’s claims for libel and slander.
          The City’s motion for partial summary judgment also properly raised the
affirmative defense of immunity in regard to all of the tort claims made against it. 
The motion was entitled “The City of Houston’s Motion for Partial Summary
Judgment Regarding Plaintiff’s Libel/slander Claim and All Tort Claims
and Plea to the Jurisdiction.” In pertinent part, the City referred to all tort claims
in the following paragraphs of the partial summary judgment motion:
4. Perry has alleged various tort causes of action against Houston in his
latest petition.
 
81. Perry’s other tort claims are also based upon intentional torts.
 
157. Based upon the foregoing, Houston has conclusively shown that
it is entitled to summary judgment on the issue of Perry’s libel/slander
claim and all other tort claims alleged by Perry.

          The record reflects that the no-evidence motion for summary judgment filed
with the trial court did not amend or supplant the City’s earlier motion for partial
summary judgment, but merely augmented it—in other words, it was a supplemental
motion for summary judgment, not an amended motion. Thus, the City’s motion for
summary judgment on all tort claims remained a live pleading. Although the trial
court disposed of Perry’s claims for tortious interference with prospective contractual
relationships, tortious interference with an employment relationship, and intentional
infliction of emotional distress by granting the City’s no-evidence motion for
summary judgment, the City was entitled to immunity from liability from these
intentional torts as well. Before issuing its opinion in Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623 (Tex. 1996), the Supreme Court of Texas had not considered
whether a court of appeals could dispose of a case on summary judgment based on
grounds on which the trial court did not rely. Id. at 626. The court held that, in the
interest of judicial economy, courts of appeals may consider summary judgment
grounds that the movant preserved for review, but on which the trial court did not
rely. Id. The rule articulated in Cates does not depend on the number of motions for
summary judgment filed, when they were presented to the trial court, or when the trial
court ruled on the motions. See Baker Hughes Inc. v. KECO R & D., Inc., 12 S.W.3d
1, 5-6 (Tex. 2000).
          Accordingly, we hold that the City established its immunity as to all of Perry’s
intentional tort claims and that the trial court could have properly rendered summary
judgment for the City on all of the intentional torts alleged on the basis of immunity.
          We overrule the first issue.
No-Evidence Summary Judgments
          In his second issue, Perry contends the trial court erred in rendering no-evidence summary judgments in regard to his claims for (1) due process violation of
his liberty interest in his good name, (2) violation of his First-Amendment rights by
retaliation, (3) tortious interference with prospective contractual relationships, (4)
tortious interference with an employment relationship, and (5) intentional infliction
of emotional distress. Because we have held that the City is immune from liability
for the intentional torts, only the claims for violation of due process and retaliation
remain.
          Perry has not contended that City policy, hiring, or supervision resulted in the
alleged violations of due process or his First-Amendment rights. Rather, both of
these claims are based upon various actions that Greanias took during his term as City
Controller, while acting in his official capacity as an agent of the City; thus, any
liability on the City’s part is indirect under the doctrine of respondeat superior. See,
e.g., Gill v. Tex. Dep’t of Crim. Justice, 3 S.W.3d 576, 581 (Tex. App.—Houston [1st
Dist.] 1999, no pet.). Accordingly, because a governmental entity’s liability under
the doctrine of respondeat superior is predicated on the liability of its employee or
agent, the City is also immune from liability based on this Court’s holding in
Greanias that Greanias was shielded from liability by official immunity. See Univ.
of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000) (“[W]here official immunity
shields a governmental employee from liability, sovereign immunity shields the
government employer from vicarious liability.”).
          We overrule the second issue.
Motions for Reconsideration
          In his third issue, Perry contends that the trial court abused its discretion by
denying his motions to reconsider its rulings on the City’s motion for partial summary
judgment and motion for no-evidence summary judgment. Because we have
concluded the trial court did not err in rendering judgment for the City, we likewise
hold that the trial court did not err in overruling Perry’s motions for reconsideration
of those judgments.
          We overrule the third issue.
          We affirm the trial court’s judgment.
 
 
 
                                                                        Elsa Alcala
                                                                        Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.