**Reversed and Remanded and Memorandum Opinion filed May 7, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00928-CV

---

**CHCA BAYSHORE, L.P. D/B/A EAST HOUSTON REGIONAL MEDICAL CENTER, Appellant**

**V.**

**ROSALVA SALAZAR, Appellee**

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2010-03516**

---

## M E M O R A N D U M   O P I N I O N

In three issues, CHCA Bayshore, L.P. d/b/a East Houston Regional Medical Center ("CHCA") contends the trial court erred by denying CHCA's motion to dismiss based on the Texas Medical Liability Act ("TMLA"). *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001 et seq. (West 2011 & Supp. 2012). We reverse and remand for further proceedings consistent with our opinion.

# I. BACKGROUND

In January 2009, appellee Rosalva Salazar was an employee of CHCA when she allegedly sustained personal injuries within the course and scope of her employment "while attempting to maneuver a patient." Because CHCA did not subscribe to worker's compensation insurance, Salazar filed suit against CHCA in January 2010, alleging,

> [CHCA] was guilty of negligence [1] in failing to provide the proper equipment or training for the job required of [Salazar], [2] failing to provide adequate assistance or supervision to [Salazar] in performing the tasks she was assigned to perform, and [3] in failing to provide her a safe place to work.

For over two years, the parties conducted discovery, and the case was set for trial several times, including on July 26, 2012. On June 29, 2012, the Texas Supreme Court issued *Texas West Oaks Hospital, LP v. Williams*, holding a non-patient hospital employee suing his employer was required to comply with the expert-report requirements governed by section 74.351 of the TMLA. 371 S.W.3d 171 (Tex. 2012); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). Relying on *Williams*, on July 17, 2012, CHCA filed a motion to dismiss Salazar's suit, contending she failed to serve a section 74.351 report. The trial court denied CHCA's motion and orally granted Salazar leave to serve a report. CHCA now brings this interlocutory appeal.

# II. APPELLATE JURISDICTION

As an initial matter, we address Salazar's contention this court lacks jurisdiction over CHCA's interlocutory appeal because CHCA is not appealing an order denying a motion to dismiss under section 74.351 but an order granting Salazar an extension to serve an expert report. During the hearing on CHCA's motion to dismiss, the following exchange occurred:

[CHCA Counsel]: . . . I take it you are denying my motion, then?

[Trial Court]: Well, yeah, I am not going to punish his client because the law changed. I am going to give him a chance to comply with the new law.

. . .

He's now obligated to file a report. I want him to file a report. And if he can't meet the standard, then the case is gone; but two months ago, he didn't have to file a report. So, maybe or maybe he did, maybe he didn't. So, I am going to let him file a report.

Under the interlocutory-appeals statute, a person may appeal an interlocutory order that "denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351." *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2012). It is undisputed Salazar did not serve CHCA with an expert report. Additionally, the trial court's grant of an extension to serve a report was not authorized under the TMLA because "in the absence of a timely report, the trial court cannot properly grant an extension under section 74.351." *Badiga v. Lopez*, 274 S.W.3d 681, 684–85 (Tex. 2009).[1] Accordingly, it is clear CHCA is appealing the trial court's denial of the motion to dismiss, as authorized under the interlocutory-appeals statute. *See id.* at 685 (holding appellate court should have considered merits of interlocutory appeal based on section 51.014(a)(9) because, "[w]hether the trial court granted an extension or not, the issue here is whether a case must be dismissed when no expert report is timely served.").

Furthermore, we reject Salazar's argument CHCA should not be allowed to file an interlocutory appeal under section 51.014(a)(9) because CHCA's right to

---

[1] We consider below Salazar's argument *Williams* applies only prospectively.

receive an expert report under section 74.351 did not "vest until over [two-and-a-half] years after the original petition was filed." There is no deadline under section 74.351 by which a defendant must file a motion to dismiss based on the plaintiff's failure to serve an expert report. *See Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 823–24 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (determining trial court properly considered defendant's motion to dismiss for failure to serve 74.351 report, even though motion was filed two-and-a-half years after defendant was served with original petition, because TMLA provides no deadline for filing motion to dismiss); *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 103 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (determining defendant did not waive right to file motion to dismiss for failure to serve section 74.351 report because no deadline for such motion). Therefore, we have jurisdiction to consider this interlocutory appeal. *See Kansas City S. Ry. Co. v. Oney*, 380 S.W.3d 795, 798 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (determining our court had jurisdiction under interlocutory-appeals statute despite appellee's attempt to alter the basis of trial court's interlocutory ruling).

## III. HEALTH CARE LIABILITY CLAIMS UNDER THE TEXAS MEDICAL LIABILITY ACT

In three issues, CHCA contends the trial court erred by denying CHCA's motion to dismiss based on Salazar's failure to serve a section 74.351 report.

### A. Standard of Review and Relevant Law

We must determine whether Salazar's claims fit within the statutory definition of "health care liability claim" ("HCLC"), a question of statutory construction we review *de novo*. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012); *Williams*, 371 S.W.3d at 177. In making that determination, we consider the entire court record, including the pleadings, motions and responses,

and relevant evidence properly admitted. *Loaisiga*, 379 S.W.3d at 258.[2] We must focus on the essence of the claims and consider the alleged wrongful conduct and the duties allegedly breached, rather than the injuries allegedly suffered. *Diversicare Gen. Ptr., Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). An HCLC may not be recast as another cause of action to avoid the requirements of chapter 74. *See id.*

> When it enacted the TMLA in 2003, the Legislature defined HCLC as:
>
> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or *safety* or professional or administrative services directly related to health care, which proximately results in injury to or death of a *claimant*, whether the *claimant's* claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (West Supp. 2012) (emphasis added). Before 2003, the predecessor act to the TMLA used the more narrow term "patient," instead of "claimant," when defining HCLC. *Williams*, 371 S.W.3d at 176–79, 188–89. An HCLC as defined in the TMLA contains three basic elements: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or

---

[2] Relying on the *Loaisiga* court's explanation that courts consider the entire record when determining if a claim is an HCLC, Salazar argues we should summarily dispose of this appeal because CHCA failed to present a full record. Salazar complains, "[CHCA] did not request the entire record, including a number of deposition certificates, [Salazar's] expert designations, all of which would illustrate the manner in which this case has proceeded." Nevertheless, after filing her brief, Salazar requested the trial court clerk to supplement the record with these and other discovery-related filings, and we have received a supplemental clerk's record. Hence, without deciding whether it was necessary to include these items in the record, we reject Salazar's argument.

omission complained of must proximately cause injury to the claimant. *Id.* at 179–80.

Under section 74.351, a claimant asserting a HCLC must serve an expert report on the defendant within a specified deadline, subject to modification by written agreement of the parties, or extension by the trial court if a timely but deficient report is filed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (c). Until the claimant serves his report, discovery is limited. *Id.* § 74.351(s). If the claimant fails to serve an expert report, the trial court must, on the defendant's motion, dismiss the claimant's claims with prejudice and award the defendant reasonable attorney's fees and costs. *Id.* § 74.351(b).

## B. *Texas West Oaks Hospital LP v. Williams*

In *Williams*, the plaintiff was a psychiatric caregiver at a mental-health hospital which did not subscribe to worker's compensation insurance. 371 S.W.3d at 174–75. The plaintiff brought a patient, who was under elevated supervised care, to an enclosed outdoor area, where he assaulted the plaintiff. *Id.* at 175. The plaintiff filed suit against the hospital, asserting the following negligence claims:

> (a) Failing to properly train [the plaintiff] to work at [the hospital's] premises, including warning him of the inherent dangers of working with patients with the conditions and tendencies that [the assaulting patient] possessed; (b) Failing to adequately supervise [the hospital's] employees, including [the plaintiff], while working with patients with conditions and tendencies that [the assaulting patient] possessed; (c) Failing to provide adequate protocol to avoid and/or decrease the severity of altercations between its employees, such as [the plaintiff], and patients; (d) Failing to provide its employees, including [the plaintiff], with adequate emergency notification devices to alert other employees of altercations in which assistance is needed; (e) Failing to warn [the plaintiff] of the dangers that [the hospital] knew or should have known were associated with working with patients such as [the

assaulting patient]; and (f) Failing to provide a safe workplace for its employees, including [the plaintiff].

*Id.* The hospital filed a motion to dismiss for the plaintiff's failure to serve a section 74.351 report. *Id.* The plaintiff argued his claims were not HCLCs but ordinary negligence claims. *Id.* at 175–76. The trial court denied the hospital's motion, and our court affirmed. *Id.* at 176.

The supreme court reversed and rendered judgment dismissing the plaintiff's claims for failure to serve a section 74.351 report. *Id.* at 193. The court determined that, by modifying the HCLC definition, the Legislature intended to expand "the breadth of HCLCs beyond the patient population." *Id.* at 178. Thus, the plaintiff's status as a hospital employee, instead of a patient, was not determinative of whether his claims were HCLCs. *Id.* at 177–79. The court then considered whether the plaintiff alleged departures from accepted standards of "safety" as that term is used in the definition of HCLC located in section 74.001(a)(13). *Id.* at 183–86.

The court determined that, under section 74.001(a)(13), an allegation the defendant departed from accepted standards of "safety"—defined in the common law as "untouched by danger; not exposed to danger; secure from danger, harm, or loss"—need not be "directly related to health care" to constitute an HCLC. *Id.* at 184–86 (quoting section 74.001(a)(13); *Diversicare*, 185 S.W.3d at 855). According to the court, "[The plaintiff's] complaints . . . concerning his protection from danger at the hands of a mental patient . . . implicate safety." *Id.* at 185. Hence, the plaintiff alleged HCLCs under the "safety" prong and was required to comply with the expert-report requirements of section 74.351. *Id.* at 193.[3]

---

[3] The court also determined the plaintiff's claims were HCLCs under the "health care" prong of 74.001(a)(13). We do not consider whether Salazar's claims fit within the "health care" prong.

7

## C.  Application of *Williams* to Salazar's Claims

As noted above, Salazar made the following negligence allegations against CHCA:

> On or about January 14, 2009, while in the course and scope of her employment with [CHCA], [Salazar] sustained serious and permanent injuries while attempting to maneuver a patient at [CHCA's] facility . . . . [Salazar's] work was supervised by an agent, servant, or employee of [CHCA].
>
> . . .
>
> [The Hospital] was guilty of negligence [1] in failing to provide the proper equipment or training for the job required of [Salazar], [2] failing to provide adequate assistance or supervision to [Salazar] in performing the tasks she was assigned to perform, and [3] in failing to provide her a safe place to work.

Salazar argues her claims are distinguishable from the plaintiff's claims in *Williams* because Salazar's "claims relate to her employer's duty to its employees to provide safe working conditions and a safe place to work[, which is] distinguishable and not related to any of the health care-related duties that her employer [owed to] patients at the facility."  Salazar also contends her claims are distinguishable because they

> principally arise from a malfunctioning automatic door, which was a hazard to her working conditions, though not to patients.  This is quite different from an injury created by the breach of health care owed to a potentially violent or volatile psychiatric patient who poses a risk to injuring himself or others.

Finally, Salazar notes that, shortly after issuing *Williams*, the supreme court explained in *Loaisiga* that a claim is not a HCLC if "the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of 'medical care, or health care, or safety or

professional or administrative services directly related to health care' even though the conduct occurred in a health care context." 379 S.W.3d at 257.

We disagree the differences between Salazar's claims and those asserted in *Williams* render that case inapplicable.[4] In the "Statement of Facts" section of her brief, Salazar asserts her claims relate to CHCA's "failure to provide a safe place to work, particularly lack of back up assistance and the poor condition of the automatic door that posed a risk to employees responsible for keeping it open for sufficient time to usher patients through." Whether the hospital failed to provide proper training, equipment, and supervision for hospital personnel responsible for moving patients so as to avoid or limit injury to the personnel clearly implicates safety as that term was interpreted by the *Williams* court. Hence, Salazar complains of CHCA's alleged departure of accepted standards of safety owed to hospital personnel who provide mobility assistance to patients. We hold Salazar's claims are HCLCs under the "safety" prong. *See Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *1–2 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, no pet. h.) (mem. op.) (relying on *Williams* court's interpretation of "safety" to affirm trial court's dismissal of suit for failure to serve section 74.351 report).

## D. Whether *Williams* Applies Retroactively

Having determined Salazar's claims are HCLCs under the *Williams* court's interpretation of the TMLA, we next consider Salazar's contention the trial court properly afforded her leave to serve an expert report because *Williams* applies prospectively but not retroactively. Court decisions generally apply retroactively because they do not create new law but simply recognize what existing law is. *See*

---

[4] The primary difference is the safety rules implicated in *Williams* involved protection of hospital employees from dangerous patients, whereas the safety rules Salazar challenges do not.

9

*Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999). However, exceptions to this rule are determined by three factors:

> (1) whether the decision establishes a new principle of law by either overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether prospective or retroactive application of the particular rule will further or retard its operation through an examination of the history, purpose, and effect of the rule; and (3) whether retroactive application of the rule could produce substantial inequitable results.

*Id.* at 4–5.

We reject Salazar's contention because the *Williams* court itself applied its interpretation of the TMLA retroactively by holding the plaintiff's claims were HCLCs which must be dismissed because of his failure to serve a section 74.351 report. *Williams*, 371 S.W.3d at 180–86, 193. Moreover, the *Williams* court did not limit application of its holding. *See Lohec v. Galveston Cnty. Comm'rs Court*, 841 S.W.2d 361, 366 n.4 (Tex. 1992) ("Our decisions operate retroactively unless this court exercises its discretion to modify that application."); *Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842, 846 n.4 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("Because there is nothing in [two supreme court opinions] indicating that the Texas Supreme Court intended for those decisions to apply only prospectively, we conclude that the court intended to apply those decisions retroactively.").[5]

---

[5] We also reject Salazar's argument the trial court implicitly excused Salazar's failure to serve an expert report because the failure was due to a good faith mistake of law. The cases cited by Salazar to support this argument involved the pre-TMLA act which required the trial court to grant a grace period to furnish a report if the court found the claimant's failure to serve a report was "not intentional or the result of conscious indifference but was the result of an accident or mistake." *Yanquinto v. Britt*, 188 S.W.3d 819, 826 (Tex. App.—Fort Worth 2006, pet. denied) (citation omitted). The TMLA does not have such a provision. *See Badiga*, 274 S.W.3d at 683.

## IV.  CONCLUSION

Accordingly, we sustain CHCA's issues.  We reverse the trial court's order denying CHCA's motion to dismiss Salazar's claims.  Because CHCA requested its attorney's fees and costs in the trial court pursuant to section 74.351(b)(1), we remand with instructions to dismiss Salazar's claims against CHCA and consider CHCA's request for attorney's fees and costs.


/s/    John Donovan
        Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.